UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: _____ **09-60551**

AIG CENTENNIAL INSURANCE
COMPANY,

Plaintiff,

vs.

J. BRIAN O'NEILL and
BANK OF AMERICA CORP.,

Defendants.
_____/

**CIV - DIMITROULEAS**

**MAGISTRATE JUDGE
SNOW**

FILED by _AJS_ D.C.

APR 1 4 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW the Plaintiff, AIG CENTENNIAL INSURANCE COMPANY (hereinafter "CENTENNIAL"), by and through its undersigned attorneys, and files this action seeking declaratory relief against Defendants, J. BRIAN O'NEILL ("O'NEILL") and BANK OF AMERICA CORPORATION ("BANK OF AMERICA") and alleges:

### PARTIES, JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, for the purpose of determining the question and actual present controversy existing between the parties.

2.     This Court has subject matter jurisdiction over this matter under the Admiralty and Maritime Jurisdiction of the United States District Court, 28 U.S.C. §1333. Specifically, this action concerns a policy of marine insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction.

3.     This is an action for declaratory relief within the admiralty and maritime jurisdiction of the United States District Court and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules governing admiralty and maritime claims.

4.     CENTENNIAL is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5.     Upon information and belief, O'NEILL is a Pennsylvania resident.

6.     O'NEILL filed related litigation in Florida state court in Broward County on or about October 29, 2007, which was removed to the United States District Court for the Southern District of Florida in November 2007. There is now pending in the United States District Court for the Southern District of Florida, the case captioned CAROLINA ACQUISITION LLC, as Owner of a 2005 Twin Screw 66½ foot Fiberglass Motor Yacht "BRYEMERE" vs. DOUBLE BILLED, LLC., PRICE MARINE SERVICES, INC., HMY YACHT SALES, INC., Jim BARBONI, RICHARD C. TALBERT, JR., Case No. 07-61738-CIV-ZLOCH. A copy of the original Complaint is attached hereto as Exhibit "A."

7.     Upon information and belief, BANK OF AMERICA's principal place of business is 100 N. Tryon Street, Charlotte, North Carolina and has continuous and systematic business contacts in the State of Florida, with a registered agent located in Plantation, Florida. On information and belief, O'Neill applied for and obtained a Ship Mortgage on the subject vessel through the Bank of America office in Jacksonville, Florida and the Ship Mortgage that forms part of the subject matter of this action was negotiated, formed and issued in Florida.

2

HOUCK ANDERSON, ATTORNEYS AT LAW

8.     Defendants conduct business in this District on a regular, systematic and continuous basis and have subjected themselves to jurisdiction in Florida pursuant to Florida's Long Arm Statute.

9.     Venue is proper in that BREYEMERE was listed, for sale, purchased, sea trialed and serviced within the State of Florida and the jurisdiction of this Court, and because the loss complained of by O'NEILL occurred just after BREYEMERE departed Palm Beach, Florida. The contract which forms part of the subject matter of this action was negotiated, executed and performed within the State of Florida and this District.

10.    This Court has person jurisdiction over O'NEILL pursuant to Florida law in that O'NEILL has systematic, substantial and continuing contacts within this District. Specifically, O'NEILL has availed himself of and submitted himself to the jurisdiction of the Courts of this District by pursuing litigation in this District to seek damages against the yacht brokers, salesmen and previous owners that sold him BREYEMERE premised on the same facts set forth herein.

11.    This Court has personal jurisdiction over BANK OF AMERICA pursuant to Florida law in that BANK OF AMERICA has systematic, substantial and continuing contacts within this District. Specifically, BANK OF AMERICA solicits sales within this District and Florida, derives income from within this State, advertises within this District and Florida, and conducts other activities within this District and Florida.

**GENERAL ALLEGATIONS**

12.    CENTENNIAL realleges and re-asserts the allegations in paragraphs 1 through 11 above, as though fully set forth herein.

3

13. On or about March 7, 2007, O'NEILL entered into a contract in Fort Lauderdale, Florida with Double Billed LLC for the purchase and sale of BREYEMERE (f/k/a M/Y "DOUBLE BILLED"), a 2005 66' Legacy Sportfish Motor Yacht, then located in Fort Lauderdale, Florida.

14. O'NEILL hired Price Marine Services, Inc. ("Price") of Fort Lauderdale, Florida to conduct sea trials and a pre-purchase survey of the vessel in and around Fort Lauderdale, Florida.

15. After surveying the vessel and conducting sea trials, Price prepared a survey report in Fort Lauderdale, Florida, which stated, among other things, a series of recommended repairs was required "to keep [the vessel] in good usable condition."

16. Price issued a survey report in Fort Lauderdale, Florida, dated March 22, 2007, stating that the "market value" of the vessel was "approximately $1,875,000 as equipped."

17. However after issuing its survey report, a representative of O'NEILL contacted Price in Fort Lauderdale, Florida and requested that the appraisal value of the vessel be increased by Price for loan and insurance purposes.

18. Thereafter, Price issued a second survey report also dated March 22, 2007 that was identical in all aspects to the original survey report save an increase of $475,000.00 in the market value of the vessel to $2,350,000.

19. The survey report attached to both the original and Amended Complaint filed by O'NEILL in the litigation referenced in paragraph 6 above reflects the lower market value of $1,875,000.

4

20. Based on the survey report prepared by Price, the parties negotiated a "survey adjustment" of $150,000 and on April 19, 2007, in Fort Lauderdale, Florida, executed a "Conditional Acceptance of Vessel", effectively lowering the original purchase price of the vessel by $150,000. The sale of the vessel was consummated and the vessel delivered in Fort Lauderdale, Florida.

21. According to the Seller's Closing Statement dated April 18, 2007, the purchaser of BREYEMERE was now reflected as being Carolina Acquisition, LLC, with O'NEILL as its sole member.

22. The Closing Statement reflects a "Contract Sale Price" of $1,575,000, plus the trade in of a 1998, 53' Ocean valued at $700,000, less the Survey Adjustment of $150,000 for an "Adjusted Sale Price plus trade" of $2,125,000.

23. CENTENNIAL subscribed to a policy of marine insurance, Number PY 758-66-66, providing insurance coverage for BRYEMERE. A copy of the applicable Declarations Page and "AIG Private Client Group Yacht Insurance policy" (the "Policy") are attached hereto and made a part hereof as **Composite Exhibit "B"**.

24. On or about April 19, 2007, while BRYMERE was located in Florida, CENTENNIAL issued the Policy, which provided property damage coverage to BREYEMERE for the period April 19, 2007 through and including April 19, 2008.

25. O'NEILL is listed as the insured under the Policy.

26. BANK OF AMERICA is listed as the Loss Payee of the Policy, with address listed as P.O. Box 2759, Jacksonville, Florida 32203-2759.

27. The Policy insured BREYEMERE for an agreed value of Two Million Three Hundred Fifty Thousand and No/100 Dollars ($2,350,000.00). The Policy is subject to a

5

deductible of Forty-Seven Thousand and No/100 Dollars ($47,000.00) for hull damage claims.

28.     At all times material hereto, BREYEMERE's primary berthing location was listed as "Florida, FL" in the Policy.

29.     This Court has jurisdiction to declare the rights, liabilities, and duties of the parties to the attached contract of marine insurance.

30.     Jurisdiction and venue are proper in that the Policy was delivered to O'NEILL while the vessel was located in Florida, the loss complained of occurred within Florida waters, the sale and acceptance of BREYEMERE occurred in Florida, and the actions arose in Florida.

31.     Defendant, O'NEILL, has asserted a property damage claim under the subject Policy maintaining that on or about June 29, 2007, after departing North Palm Beach, Florida en route to Charleston, South Carolina, BREYEMERE almost immediately suffered significant movement in the forward fuel tanks as the result of a lack of structural integrity in the hull of the vessel, which was later discovered to have also caused considerable flexing of the hull underneath the cabinets on the starboard side of the vessel.

32.     After the vessel arrived in Newport, Rhode Island, O'NEILL retained several experts to investigate the condition of BREYEMERE, and they each found as follows:

    a.    Anthony Knowles of Newport Marine Surveyors concluded that the boat was not built as designed and was unseaworthy.

6

    b.    Matthew Smith, a naval architect, concluded that the vessel was not built to the designer's structural specifications and, as a result, is unseaworthy, unsafe to operate and not structurally sound.

    c.    Mark Ashton of Independent Marine Systems conducted a thermal infra-red imaging survey of BREYEMERE, which confirmed the existence of significant delamination on both the port and starboard sides of the hull in a number of different locations.

    d.    A fiberglass materials specialist, Bruce Pfund of Special Projects, LLC concluded that the vessel, as built, does not correspond to the design specifications of BREYEMERE.

    e.    At the request of Anthony Knowles, Pedrick Yacht Designs further inspected BREYEMERE and opined that the longitudinal stringers were undersized from the design in both their depth and length along the hull, and further opined that the vessel, as constructed, did not meet structural standards and was unseaworthy.

33.    Pedrick Yacht Designs developed a repair strategy and recommended that BREYEMERE could be re-constructed to its original design specifications by installing outboard longitudinals in the forward area of the hull to make the vessel sufficiently strong to be fit for her intended service. Thereafter, Hinckley Yacht Services was asked to complete the repairs for a total cost in excess of $1,255,384.79.

34.    O'NEILL, through Carolina Acquisitions LLC, filed litigation as laid out in paragraph 6, which arises from the same fact pattern as set forth herein.

7

35.     However on December 23, 2008, O'NEILL filed an insurance claim with CENTENNIAL with a date of loss of July 27, 2007, seeking to recover the cost of repairs completed by Hinkley and attributes the damage to having been caused by a "latent defect."

36.     As is detailed further below, CENTENNIAL is in doubt as to whether there is coverage for this loss and on or about March 19, 2009 issued a Reservation of Rights letter to O'NEILL and copied to BANK OF AMERICA.

37.     Accordingly, there is an actual case in controversy between the Parties requiring action by the Court for resolution. CENTENNIAL seeks a determination and declaration by the Court as to whether coverage exists under the subject policy for the loss claimed by O'NEILL and/or BANK OF AMERICA.

**COUNT I**
**LOSS COMPLAINED OF IS NOT A COVERED PERIL—**
**O'NEILL AND BANK OF AMERICA**

38.     CENTENNIAL realleges and re-asserts the allegations in Paragraphs 1 through 37 (including all subparts) above, as though fully set forth herein.

39.     The contract section of the Policy states in pertinent part as follows:

**DECLARATIONS PAGE**

It is understood and agreed that in the interest of the Mortgagee(s) $1,976,000, shall not be impaired or invalidated by any act or omission, or neglect of the mortgagor, owner, master, agent or crew of the vessel(s) insured by this policy, or by failure to comply with any warranty or condition over what the Mortgagee has no control.

All other terms, conditions and valuations remain unchanged.

| OTHER COVERAGE | LIMITS(USD) | DEDUCTIBLES | PREMIUM |
|---|---|---|---|
| Breach of Warranty | $1,976,000 | $0 | $1,087 |

**Loss Payee:**     Bank of America

8

## PART I – THE YACHT INSURANCE CONTRACT

The insurance company named on your Declarations Page will provide the insurance described in this **policy** and any endorsements.  You agree to pay the premium and comply with your obligations described in this **policy**.

The insurance cover is subject to all terms, conditions and exclusions noted in the policy, some of which restrict or exclude coverage. Read the entire **policy** including any accompanying endorsements carefully to determine your rights and obligations, and what is and is not covered.  We have no duty to provide coverage unless there has been full compliance with these **policy** terms and conditions.

We have relied on the information given to us by you or on your behalf (including the information in any submission and any documents and survey reports) in deciding to agree to this insurance contract.    All information provided to us by you or on your behalf must be complete and accurate.  This insurance contract is void if any information provided to us is incomplete, inaccurate or if any material information has been withheld.

40.        The Definitions section of the Policy states in pertinent part:

## PART II – DEFINITIONS

**Insured Person:** means:
a.        You or a **family member;**
b.        An additional insured named in the **policy…**

**Latent Defect:** means a hidden flaw in the material of construction existing at the time of original building of the **yacht** or any additional or replacement parts, components or systems of the **yacht** which is not discoverable by ordinary observation or known methods of testing.

**Market Value:** refers to the amount for which the article could reasonably be expected to be replaced immediately prior to the time of loss with one substantially identical to the article lost or damaged.

**Physical Loss or Damage:** means the actual physical harm to or destruction of tangible property insured under this policy.

41.        The insuring clauses of the Policy state in pertinent part:

## PART III – PROPERTY COVERAGE

## A.    Insuring Agreement

This **policy** covers you against all risk of **physical loss or damage** to your **yacht** and its **contents, fine arts** and **personal effects** while on board your

9

**yacht**. This coverage is subject to the **Navigational Limits**, and all **policy** terms, conditions and exclusions.

## C. <u>Payment of a Loss</u>

For a covered loss, we will pay as follows:

- **Partial Damage to the Yacht**

...We will not pay for any improvement or betterment to the yacht.

## F. <u>Loss Payee</u>

If a loss payee is named in this **policy**, any claim payable will be paid to the loss payee and you, as interests appear. If more than one loss payee is named, the order of payment will be the same as the order of precedence of the loss payees.

42. The exclusions to the Policy state in pertinent part as follows:

## PART III – PROPERTY COVERAGE

## E. <u>Property Exclusions</u>

These exclusions apply to Part III – Property Coverage. There shall be no insurance under Part III – Property Coverage for any loss, damage, claim or expense resulting directly or indirectly, in whole or in part from:

- **Gradual or Sudden Loss**

We do not cover any loss, damage, claim or expense caused directly or indirectly, in whole or in part by osmosis, blistering, fiberglass or surface coat blistering, electrolysis, rust, corrosion or oxidations, marine life, marine borers, moth or vermin, rot, fungus, mold or infestation, warping or shrinkage, change of temperature or humidity, deterioration, lack of maintenance, wear and tear, inherit vice.

- **Latent Defect**

We do not cover any loss, damage, claim or expense for the repair or replacement of any **latent defect** in the **yacht**, however, any **physical loss or damage** to the **yacht** resulting or caused by the **latent defect** will be covered.

- **Manufacturing and Design Defects**

We do not cover any loss, damage, claim or expense caused directly or indirectly, in whole or in part by any defect in design or manufacture of the **yacht** or any additional replacement part, component or system of the **yacht**.

### PART VI- GENERAL EXCLUSIONS AND CONDITIONS

**B.   General Conditions**

We will not be liable to pay any claim under this insurance unless you and any **insured person** comply with all the requirements in the following conditions.

- **Misrepresentation and Fraud**

    This contract of insurance is void if any information provided to us is incomplete or inaccurate or if any material information has been withheld either at the time of applying for this **policy**, during the **Policy Period**, before or after a loss.

### Lack of Fortuity

43.     Under the general maritime law, a policy of marine insurance insures only against those losses that are fortuitous and beyond the control of the assured and will not cover losses that are inevitable.

44.     In O'NEILL's original and Amended Complaint, in his own deposition and numerous court filings in the litigation referred to in paragraph 6, O'NEILL consistently takes the position that BREYEMERE was inherently structurally unsound and unseaworthy at the time he purchased the vessel.

45.     Statements found in a party's pleadings and filings before a court have the legal effect of creating judicial admissions.

46.     BREYEMERE's loss and hence O'NEILL's property damage was not fortuitous, as it resulted from an inherent lack of structural integrity in the construction of the vessel.

11

47.     Under the general maritime law, a loss must be fortuitous and occasioned by a covered peril in order for an insured to recover under the subject Policy.

48.     Because O'NEILL has admitted that the loss has resulted from an inherent lack of structural integrity in the vessel, there is no coverage under the Policy.

### No Latent Defect

49.     O'NEILL demands payment under the Policy for the subject loss, claiming that the loss resulted from a "latent defect".

50.     However, a latent defect is defined by the Policy to mean a hidden flaw in the material of construction existing at the time of the original building.  All of the evidence presented in O'NEILL's parallel proceedings referred in paragraph 6 above discusses a failure to build the vessel according to the design specifications with a resultant lack of structural integrity in the hull and unseaworthiness of the vessel.

51.     There is testimony, evidence, report of other information to the effect that there is an actual "flaw" in the materials of construction.  To the contrary, all of the testimony, reports and evidence speak to a unanimous opinion that all of the deficiencies in the vessel were the result of the structural deficiencies of BREYEMERE that existed at the time of purchase by O'NEILL.

52.     Moreover, the Policy provides that there is no coverage for the repair or replacement of the latent defect itself, only for any physical loss or damage caused by the latent defect.

53.     Because the proximate, efficient cause of the loss and/or damage to BREYEMERE is a failure to build the vessel according to the design specifications,

12

there is no coverage for the cost of correcting the lack of structural support and strengthening and rebuilding the vessel to her original design specifications.

Loss is Specifically Excluded Under the Policy

54.     Under Section E, Property Exclusions of the Policy, there is no coverage for "....any loss, damage, claim or expense caused directly or indirectly, in whole or in part by any defect in design or manufacture of the **yacht** or any additional or replacement part, component or system of the **yacht**."

55.     If BREYEMERE had been built to her design specifications, there would be no structural problems.

56.     The experts that have inspected and tested BREYEMERE are unanimous that the vessel is structurally unsound, unsafe and unseaworthy because she was not built according to her design specifications. Thus, any damage caused, directly or indirectly, by the failure of her builder to follow the design specifications is specifically excluded from coverage under the Policy and existed before the risk attached under the subject Policy.

Inherent Vice

57.     Under Section E, Property Exclusions of the Policy, there is no coverage for "....any loss, damage, claim or expense caused directly or indirectly, in whole or in part by...inherent vice."

58.     An inherent vice is generally defined by the maritime law as any existing defects, diseases, decay or the inherent nature of a commodity which will cause it to deteriorate with a lapse of time. It is also defined as a cause of loss that does not relate to an extraneous cause but to a loss entirely from internal decomposition or some

13

quality inherent in the property that brings about its own injury or destruction.  In other words, where the property contains its own seeds of destruction and it is those seeds that cause the loss, the loss is caused by inherent vice.

59.     Any physical damage found in BREYEMERE, as well as the various structural deficiencies themselves, are caused by the inherent lack of structural integrity of her construction. The physical damage, as well as the need for re-construction, all stem from the fact that the damage, deterioration and eventual loss of the vessel was the inevitable result of the lack of structural integrity and eventual structural failure that was inevitable and rendered her unfit for her intended purpose.

No Physical Loss or Damage Minimal

60.     The "Insuring Agreement" only provides coverage for "physical loss or damage" which is defined to mean "actual physical harm" to tangible property.

61.     A significant amount, indeed, the vast majority, of the cost of the repairs claimed involved removal, restoration and re-construction in connection with what essentially amounted to disassembling and re-building the vessel to correct major structural flaws in her original construction. Therefore, there was no actual "physical harm" as called for under the Policy.

62.     The cost of correcting the lack of structural support and strengthening and rebuilding the vessel to her original design specifications would not be included as a covered loss, as the Insuring Agreement, Part III, Section C, Part III clearly provides that CENTENNIAL will not pay for any improvement or betterment of the yacht.

No Covered Loss

63.     The loss and/or damage to BREYEMERE was not fortuitous.

14

64.     Additionally, the loss and/or damage to BREYEMERE was caused by or resulted from one of more causes expressly excluded by the Policy, *i.e.*: manufacturing and design defect and/or inherent vice.

65.     Furthermore, cost of correcting the lack of structural support and strengthening and rebuilding the vessel to her original design specifications would not be included as a covered loss, as there is no coverage for any improvement or betterment of the yacht

66.     There is no insurance coverage for O'NEILL's property damage loss or claim because the loss was not fortuitous and the damages were caused by or resulted from causes excluded under the Policy.

67.     There is no insurance for any claim by BANK OF AMERICA under the policy because: (1) BANK OF AMERICA has suffered no loss; (2) as Loss Payee, there is no loss payable under the Policy; and (3) as mortgagee, the efficient proximate cause of the lack of structural integrity was not the result of any act, omission or neglect of the mortagor, owner, master or crew of the vessel or their failure to comply with any warranty or condition.

WHEREFORE, CENTENNIAL respectfully requests this Honorable Court to declare and adjudge the following:

a.     The loss and/or damage to BREYEMERE was not fortuitous and there is no property damage coverage for the loss she sustained on or about June-July 2007;

b.     The Policy's property damage coverage excludes damages caused by inherent vice and/or manufacturing and/or design defect;

15

HOUCK ANDERSON, ATTORNEYS AT LAW

c.       The loss and/or damage to BREYEMERE was caused by or resulted from inherent vice and/or manufacturing and/or design defect, or by a combination of one or more of the aforementioned Policy exclusions;

d.       The loss and/or damage to BREYEMERE is not covered under the subject Policy's property damage provisions; and

e.       Grant any other relief this Honorable Court may deem just and proper.

## COUNT II
## BREACH OF THE ABSOLUTE WARRANTY OF
## SEAWORTHINESS UNDER GENERAL MARITIME LAW—
## O'NEILL AND BANK OF AMERICA

68.      CENTENNIAL realleges and re-asserts the allegations in paragraphs 1 through 37 above, as though fully set forth herein.

69.      Under the general maritime law of the United States, there is implied in every policy of marine insurance an absolute warranty that the vessel will be seaworthy at the inception of the risk.

70.      If the vessel is unseaworthy at the inception of the risk, any insurance coverage afforded by the Policy is void *ab initio*.

71.      In his original and Amended Complaint, in his own deposition and numerous court filings in connection with the litigation referred to in paragraph 6, O'NEILL consistently takes the position that BREYEMERE was unsafe, unseaworthy and structurally unsound at the time he purchased it.

72.      Statements found in a party's pleadings and filings before a court have the legal effect of creating judicial admissions.

16

73.    The unanimous opinion of various experts hired by O'NEILL confirms that BREYEMERE was, in fact, unseaworthy as a result of numerous deficiencies in the manner in which she was constructed at the time the Policy became effective.

74.    Accordingly, as there is a breach of the absolute warranty of seaworthiness implied in the Policy, the Policy is rendered void.

75.    The vessel's unseaworthiness was the direct and proximate cause of the Defendants' losses.

76.    All of the damages claimed and expenses incurred as a result of BREYEMERE's loss were proximately caused by the unseaworthy condition that were present the moment O'NEILL purchased the vessel.

WHEREFORE, CENTENNIAL respectfully requests this Honorable Court to adjudge and declare the following:

       a. The vessel BREYEMERE was unseaworthy at the inception of the risk;

       b. There is no insurance coverage afforded by the Policy and is void *ab initio;*

       c. The loss and/or damage to BREYEMERE was proximately caused by her unseaworthy condition at the commencement of the Policy;

       d. The loss and/or damage to BREYEMERE is not covered by, but is excluded from coverage under the implied absolute warranty of seaworthiness under the general maritime law; and

       e. Grant any other relief this Honorable Court may deem just and proper.

17

## COUNT III
## MISREPRESENTATION – O'NEILL

77.    CENTENNIAL realleges and re-asserts the allegations in paragraphs 1 through 37 above, as though fully set forth herein.

78.    Under the general maritime law of the United States, an insured under a maritime insurance policy has a duty of utmost good faith to the insurers of the vessel covered by such a Policy, otherwise known as *uberrimae fidei*.

79.    Under the doctrine of *uberrimae fidei,* an insured must disclose to the insurer before the contract of insurance is concluded, every material fact and circumstance which is known to the insured which is material to the risk being undertaken by the insurer.

80.    The Policy, in Part VI – GENERAL EXCLUSIONS AND CONDITIONS, Section B, General Conditions, provides that this "…contract of insurance is void if any information provided to us is incomplete or inaccurate or if any material information has been withheld, either at the time of applying for this policy, during the Policy Period, before or after a loss." Similar language is contained in the Policy in Part I, which states "[t]his insurance contract is void if any information provided to us is incomplete, inaccurate or if any material information has been withheld or misrepresented.

81.    The application for insurance submitted by O'NEILL to CENTENNIAL requests that the insured provide information with regard to the vessel purchase price.

82.    In the application submitted to obtain this Policy, a Luxury Yacht Application form and a Water Craft Application form were submitted to CENTENNIAL in

18

HOUCK ANDERSON, ATTORNEYS AT LAW

order for O'NEILL to obtain this yacht insurance. Both documents are attached hereto as **Plaintiff's Composite Exhibit "C."**

83.     In Section VII of the Luxury Yacht Application form, the requested insurance coverage for yacht hull and machinery was a coverage limit value of $2,350,000.   In Section III of the Water Craft Application form, requesting vessel information, the applicant was requested to provide information concerning the vessel purchase price. In applying for the Policy, the information provided by or on behalf of O'NEILL to CENTENNIAL with regard to the vessel purchase price for BRYEMERE stated that the vessel purchase price was $2,350,000.

84.     In addition to the Yacht Insurance Application, O'NEILL was requested to submit a marine survey report documenting the condition and market value of the vessel.   Accompanying the application for the subject policy of insurance in this case was a survey, dated March 27, 2007, prepared by Price, which indicates that the market value of BRYEMERE was approximately $2,350,000, an amount which was identical to the amount of the hull and machinery insurance requested as well as being identical to the vessel purchase price reflected in the application submitted to CENTENNIAL. A copy of the survey is attached hereto as **Plaintiff's Exhibit "D."**

85.     However, CENTENNIAL has now learned that Price issued another yacht survey report dated March 22, 2007 which reflects that the market value of BREYEMERE was, in fact, $1,875,000 not $2,350,000, as reflected in the survey report provided with the application for insurance.

19

86.     Additionally, Mr. Price of Price Marine Services has admitted under oath that he was requested by a representative of O'NEILL to increase the amount of his original valuation of the vessel for loan and insurance purposes.

87.     Further, the Closing Statement of the sale of BRYEMERE to O'NEILL reflects a "Contract Sale Price" of $1,575,000, plus the "trade-in" of a 1998, 53 foot Ocean, valued at $700,000, less a "Survey Adjustment" of $150,000 for an "Adjusted Sales Price plus trade" of $2,125,000. A copy of the Closing Statement is attached hereto as **Plaintiff's Exhibit "E."**

88.     Thus, the actual "vessel purchase price" was $225,000 less than the "vessel purchase price" reflected on the insurance application.

89.     The misrepresentations of O'NEILL as to the vessel's purchase price were material to CENTENNIAL's acceptance of the risk. Had CENTENNIAL known the true value of the vessel, they would not have insured BREYEMERE and O'NEILL, or they would not have insured the vessel and its owner on the same terms and conditions.

90.     Consequently, by reason of O'NEILL's misrepresentations of material fact, concealment of material facts and failure of condition precedent to the formation of a valid contract of insurance, Policy No. PY 758-66-66 is void from inception and of no legal effect whatsoever.

WHEREFORE, CENTENNIAL respectfully requests this Honorable Court to adjudge and declare the following:

> a. O'NEILL misrepresented to CENTENNIAL the actual appraised market value and actual purchase price of BREYEMERE;

20

b. O'NEILL's misrepresentations were material to CENTENNIAL's acceptance of the risk;

c. As a result of O'NEILL's material misrepresentations as to the actual appraised market value and actual purchase price of BREYEMERE, the Policy is void *ab initio*; and

d. Grant any other relief this Honorable Court may deem just and proper.

## COUNT IV
## MISREPRESENTATION – BANK OF AMERICA

91.     CENTENNIAL realleges and re-asserts the allegations in Paragraphs 1 through 37 and 77 through 90 above, as though fully set forth herein.

92.     In the litigation cited in Paragraph 6, O'NEILL has testified under oath that the bank was aware that the "market value" and the purchase price of the vessel was actually less than that listed on the survey.

93.     Therefore, on information and belief, BANK OF AMERICA was aware that the information given by O'NEILL to CENTENNIAL with regard to the market value and purchase price of BRYEMERE was inaccurate.

94.     As the Policy provides that the contract of insurance is void if any information provided is inaccurate or incomplete or if any material information has been withheld, BANK OF AMERICA had a duty under the general maritime law principle of *uberrimae fidei* to disclose to CENTENNIAL before the contract of insurance was concluded the true market value and purchase price of the vessel.

95.     The misrepresentations by BANK OF AMERICA as to the vessel's market value and purchase price were material to CENTENNIAL's acceptance of the risk. Had

21

CENTENNIAL known the true value of the vessel, they would not have insured BREYEMERE and BANK OF AMERICA, or they would not have insured the vessel and BANK OF AMERICA on the same terms and conditions.

96.     Consequently, by reason of BANK OF AMERICA's misrepresentations of material fact, concealment of material facts and failure of condition precedent to the formation of a valid contract of insurance, Policy No. PY 758-66-66 is void from inception and of no legal effect whatsoever.

97.     Accordingly, there is an actual case in controversy between the Parties requiring action by the Court for resolution.

WHEREFORE, CENTENNIAL respectfully requests this Honorable Court to adjudge and declare the following:

                    a. BANK OF AMERICA misrepresented to CENTENNIAL the actual market value and purchase price of BREYEMERE;

                    b. BANK OF AMERICA's misrepresentation was material to CENTENNIAL's acceptance of the risk;

                    c. As a result of BANK OF AMERICA's material misrepresentation as to the actual value of BREYEMERE, the Policy is void *ab initio*; and

                    d. Grant any other relief this Honorable Court may deem just and proper.

22

Dated this 14th day of APRIL, 2009.

Respectfully submitted,

ANDREW W. ANDERSON, ESQ.
Florida Bar No.: 213144
MICHELLE OTERO VALDÉS, ESQ.
Florida Bar No.: 14990
HOUCK ANDERSON P.A.
200 South Biscayne Blvd., Suite 300
Miami, Florida   33131-2332
Attorneys for Plaintiff
Telephone:  (305) 372-9044
Facsimile:   (305) 372-5044
Email:   aanderson@houckanderson.com
              motero@houckanderson.com

23

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

AIG CENTENNIAL INSURANCE COMPANY

**DEFENDANTS**

J. BRIAN O'NEILL AND BANK OF AMERICA CORP

FILED by ATS D.C.

APR 14 2009

STEVEN M. LARIMORE
CLERK U.S. DIST CT
S.D. of FLA. – MIAMI

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** PENNSYLVAN
(EXCEPT IN U.S. PLAINTIFF CASES)

09-CV-60551 – Dimitrouleas/Snow

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

HOUCK ANDERSON P.A.
200 S. BISCAYNE BLVD, SUITE 300
MIAMI FL 33131   305 372 9044

ATTORNEYS (IF KNOWN)

REED SMITH LLP
2500 ONE LIBERTY SQUARE PLACE
1650 MARKET STREET
PHILADELPHIA, PA 19103

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, (BROWARD,) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☑ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

FEDERAL DECLARATORY JUDGMENT ACT 28 U.S.C. §2201, AS THIS ACTION CONCERNS A POLICY OF MARINE INSURANCE ON A VESSEL, GIVING RISE TO ADMIRALTY AND MARITIME JURISDICTION

**IVa.** 5 **days estimated (for both sides) to try entire case**

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A  CONTACT | A  TORTS | | A  FORFEITURE/PENALTY | A  BANKRUPTCY | A  OTHER STATUS |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A  PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B  SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A  LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A  REAL PROPERTY** | **A  CIVIL RIGHTS** | **B  PRISONER PETITIONS** | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **A  FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure  B | ☐ 442 Employment | ☐ 530 General * | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other * | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights * A or B | | | ☐ 890 Other Statutory Actions * * A or B |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

- ☑ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A ☐ UNDER F.R.C.P. 23 **CLASS ACTION**   **DEMAND $**   Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☑ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):
JUDGE ZLOCH   DOCKET NUMBER 07-61738-CIV

**DATE** 4/14/2009

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 999100   Amount $ 850.00   M/ifp:
Date Paid: 04/14/09