UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60551 CIV-ZLOCH

AIG CENTENNIAL INSURANCE
COMPANY,

       *Plaintiff*,

vs.

J. BRIAN O'NEILL,
CAROLINA ACQUISITION, LLC, and
BANK OF AMERICA, N.A.,

       *Defendants*.

_____/

### J. BRIAN O'NEILL AND CAROLINA ACQUISITION LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THEIR FIRST REQUEST FOR PRODUCTION

       Defendants/Counter-Plaintiffs, J. Brian O'Neill and Carolina Acquisition, LLC (collectively, "O'Neill"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 37 and Southern District of Florida Local Rule 26.1, move this Court for the entry of an Order compelling Defendant, AIG Centennial Insurance Company ("AIG"), to produce documents responsive to their First Request for Production, as follows:[1]

## I.    Introduction

       This action arises out of AIG's wrongful refusal to pay for covered damage caused by latent defects in the *M/V Bryemere*, a 66 foot yacht insured by AIG under an all-risk yacht policy (PY 758-66-66) (the "Policy") effective April 19, 2007. Though the damage occurred and the loss was timely reported in July 2007, AIG engaged in a protracted investigation and unnecessarily delayed making a decision on coverage. Indeed, approximately one and a half years after the loss, AIG issued a reservation of rights letter, advising that AIG had still not made a final determination regarding coverage for the loss and that the claim was still under

---

[1] Undersigned counsel certifies that Defendants have attempted, without success, to resolve this discovery dispute with opposing counsel pursuant to Southern District of Florida Local Rule 26.1(i). *See* the letters/emails exchanged between counsel are attached as Composite Exhibit A.

investigation. Then, without warning, on April 14, 2009, AIG filed this lawsuit against O'Neill, seeking a declaration that the Policy either provides no coverage for the loss or is void due to an alleged miscalculation of the purchase price. AIG spared no excuse in this effort, raising numerous Policy exclusions and a collage of coverage defenses.[2] O'Neill denied AIG's allegations and filed a Counterclaim for breach of contract. This Motion seeks to compel discovery relevant to these claims and defenses.

## II.    Procedural Background

On February 9, 2010, O'Neill propounded his First Request for Production on AIG. On March 26, 2010, AIG served its Response (the "Response"), but no privilege log. O'Neill immediately began to confer in good faith, and, on April 12, 2010, AIG served its Amended and Supplemental Response to O'Neill's First Request for Production (the "Amended Response"). AIG also, for the first time, provided O'Neill with a list of documents it deemed privileged (the "Privilege Log"), but failed to delineate what privileges purportedly applied. By email dated April 13, 2010, O'Neill again attempted to confer with AIG to resolve continued deficiencies.[3] On April 19, 2010, AIG served its First Amended Privilege Log (the "Amended Privilege Log"), but still refused to identify what privileges applied to shield the documents listed on the Log.[4] O'Neill continued attempts to confer, but AIG has refused to withdraw its unsubstantiated objections or produce documents responsive to O'Neill's requests. For the reasons discussed below, O'Neill respectfully requests that this Court enter an Order (a) overruling AIG's objections to O'Neill's First Request for Production; and (b) compelling AIG's immediate production of all documents responsive to Request Nos. 1-7, 10, and 12 and/or alternatively, conducting an *in camera* inspection of the documents on AIG's Amended Privilege Log and compelling the production of those not shielded by attorney-client privilege or work product immunity.

---

[2]   On November 25, 2009, AIG filed its Amended Complaint for Declaratory Relief. *See* [D.E. 31]. On January 8, 2010, O'Neill filed his Answer, Affirmative Defenses and Counterclaim. *See* [D.E. 35]. On January 28, 2010, AIG filed its Answer to O'Neill's Counterclaim. *See* [D.E. 38].

[3] *See* Composite Exhibit A.

[4]   Copies of O'Neill's First Request for Production, as well as copies of AIG's Response, Amended Response, Privilege Log, and Amended Privilege Log are attached as Composite Exhibit B.

### III.   Argument

Pursuant to Southern District of Florida Local Rule 26.1(h)(3), O'Neill's requests, and AIG's responses/objections are set forth verbatim below, followed by the reasons production must be compelled.  We first address the inadequacy of AIG's Amended Privilege Log, as it alone justifies the relief requested by this Motion.

### A.   *AIG's Failure To Provide A Proper Privilege Log*

The Southern District of Florida recognizes that where "a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived." *Consumer Electronics Ass'n v. Compras and Buys Magazine, Inc.*, 2008 WL 4327253, *3 (S.D. Fla. Sept. 18, 2008).  The party resisting discovery bears the burden of demonstrating the applicability of the privilege or immunity and is required to produce a log or index of the withheld information detailing, "for each separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery." *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.* 230 F.R.D. 688, 695 (M.D. Fla. 2005) (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D. Ind. 1991)); *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991); S.D. Fla. L.R. 26.1(g)(3)(B); Fed. R. Civ. P. 26(b)(5).  Without a "proper privilege log," there is simply no information available to a requesting party (or a court) to determine the nature of the allegedly protected documents being withheld by an objecting party.

Federal courts have long recognized that a failure to substantiate privilege/immunity objections can (and should) result in a waiver of such objections.  *See, e.g., Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991) (holding that when the "responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper" and can result in waiver of the claimed privileges); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541-42 (10th Cir. 1984) (holding that a blanket, non-specific attorney-client privilege or work product objection was insufficient and effected a waiver of the privilege).

Here, AIG's initial Response was not accompanied by a privilege log, and AIG has not

provided O'Neill with a legally sufficient privilege log since.[5]  AIG's Amended Privilege Log is deficient, as AIG has failed to identify the documents in its underwriting file and the privileges that supposedly apply to the remaining documents.  Since AIG's privilege log was neither timely produced nor sufficiently specific, AIG has waived its right to assert privileges and it should be compelled to produce all withheld discovery.[6]  We now turn to the specific requests at issue.

**B.**     ***AIG's Objections Are Unfounded***[7]

**Request No. 1**

Complete certified copies of all insurance policies issued by you to us, including any amendments or endorsements thereto.

**Response No. 1**

Please see attached.

**Amended Response No. 1**

This document has been requested and will be provided upon receipt.

**Reason(s) To Compel Production**

This information was not attached to AIG's Response as indicated.  And during the conferral process AIG only produced a certified copy of the *Bryemere* Policy, not all insurance policies that it has issued to O'Neill.  O'Neill nevertheless narrowed his request to all declarations pages for policies issued to him or his businesses and will accept same for the period January 1, 2005 through the present.  AIG, however, refuses to produce even these pages.  Thus, although AIG asserted no objection to this Request, it improperly limited its response to the Policy covering the *Bryemere*.  Here, broader discovery is warranted.

In its Amended Complaint, AIG seeks to void the Policy on grounds of an alleged misrepresentation on the insurance application.   Specifically, AIG asserts that the vessel purchase price was $225,000 less the $2.35 million set forth in the final survey issued by Price

---

[5] *See* Composite Exhibit B.

[6] Alternatively, O'Neill requests that this Court order AIG to immediately tender a more comprehensive and legally sufficient privilege log and require AIG to submit to this Court for an *in camera* inspection all documents listed in its Amended Privilege Log.

[7] AIG's responses/objections have been copied into this Motion verbatim, including any spelling and grammatical errors.

Marine Services.[8]  In order to void the Policy on grounds of misrepresentation, AIG must prove that the alleged misrepresentation was material to its decision to insure the *Bryemere*.  *See, e.g., Great Lakes Reinsurance (UK) v. Roca*, 2009 WL 200252 (S.D. Fla. Jan. 27, 2009).  Here, the alleged misrepresentation could not reasonably be deemed material to AIG's underwriting the risk for numerous reasons.  The one relevant to this request answers the question – what was material to AIG's decision to insure O'Neill's boat?  For one: AIG's extensive, lucrative and longstanding relationship with O'Neill.  The function of an underwriter is to write business that will make the company money, and AIG's underwriters are no exception.  AIG annually collects approximately $600,000 in premiums from O'Neill and his businesses.  As result of this relationship, AIG solicited O'Neill's business with respect to insuring the *Bryemere* and even offered the same coverage for a lower premium than originally quoted by an affiliated company, New Hampshire Insurance Company.  AIG then annually renewed the Policy, along with the myriad other policies issued to O'Neill and his businesses, something it plainly would not have done if it truly believed O'Neill lied on the insurance application.  In reality, there was no misrepresentation, and the alleged miscalculation of the purchase price was plainly not material to AIG;[9] rather the depth of its relationship with O'Neill was.  The Declaration pages for each of the policies issued to O'Neill and his businesses  for the period January 1, 2005 to the present should be compelled produced.

## Request No. 2

The complete underwriting file pertaining to the Policy, and any renewal insurance policies issued by you to us, including but not limited to the file folder or file folders themselves, all papers, documents, and investigative reports directly pertaining to the Policy, inter- and intra-office memoranda or notes pertaining to the Policy, and any and all written communications which directly or indirectly pertain to the issuance of the Policy to us.  Please include any documents relating or referring in whole or in part to loss control or underwriting inspection(s) pertaining to the property.

---

[8] The initial survey failed to incorporate the value of a trade-in vessel and the cost of repairs made in connection with the purchase and so was necessarily revised to incorporate these values.

[9] Premiums are set based on condition and value.  AIG evaluated the condition of the boat and set a premium commensurate with the risk.  This premium was necessarily equal to or higher than what AIG would charge for less valuable property (such as a boat worth $2,125,000 rather than $2,350,000).  Because AIG did not refuse coverage based upon the condition of the vessel and would not have charged a higher premium for a less valuable vessel, the purchase price is immaterial.

**Response No. 2**

Plaintiff objects to this request, as it is not reasonably calculated to lead to the discovery of evidence that would be admissible as to any fact at issue in this breach of contract case. The only significant underwriting issue in this case concerns the insured vessel's selling price and market price, the materiality of which are well-established by law.

Further, Centennial's underwriting file is proprietary and may contain information that constitutes a trade secret or is otherwise confidential, the disclosure of which will subject Centennial to unnecessary trade disadvantage.

Additionally, Plaintiff objects to this request as burdensome and overbroad, as well as vague, in that it request production of "any and <u>all</u> written communication which directly or <u>indirectly pertain</u> (*sic.*) to the issuance of the Policy to us." (emphasis supplied)

**Amended Response No. 2**

Objection. Plaintiff objects to Defendants' Request for Production Number Two (2) as it is overbroad, unduly burdensome, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The only matter at issue in this case is the policy of insurance (which has been produced) and the allegation Plaintiff breached such policy. As such, the underwriting file is irrelevant to this matter. *See Millzano v. State Farm Ins. Co.*, 247 F.R.D. 691 at 702-01 (S.D. Fla. 2007) (an insurer's underwriting file is irrelevant and not discoverable in the absence of an ambiguity in the insurance policy).

**Reason(s) To Compel Production**[10]

Collectively, AIG raises the following objections: relevance, burden, and trade secret.[11] As demonstrated below, AIG's objections should be overruled for the following reasons: (a) the underwriting file is directly relevant to AIG's claims and O'Neill's claim and defenses; (b) AIG's boilerplate undue burden objection is unsubstantiated and deficient; and (c) AIG has failed to demonstrate that the documents withheld comprise trade secrets.

***The Underwriting File is Undeniably Relevant to this Case***

The discovery provisions of the Federal Rules of Civil Procedure "require the disclosure of all relevant information" so that the parties may fully develop and crystallize concise factual issues for trial and so that "the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts." *U.S. v. Lowe*, 2008 WL 4500224,

---

[10] AIG's Amended Response raises for the first time the "unduly burdensome" objection, albeit without elaboration. But AIG is not entitled to assert objections in its Amended Response that were not asserted in its Response. *See* Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed *must* respond in writing *within 30 days* after being served"). Accordingly, this objection should be overruled as untimely.

[11] O'Neill treats AIG's overbreadth objection as a relevance objection, so that it is not superfluous when read in conjunction with AIG's other blanket objections.

*1 (M.D. Fla. Oct. 3, 2008) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958)); *see also Lerer v. Ferno-Washington, Inc.*, 2007 WL 3256585, *3 (S.D. Fla. Nov. 2, 2007) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)).[12] As such, they are to be broadly and liberally construed. *Lerer* at *3. The standard for relevancy allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense... ." Fed. R. Civ. P. 26(b)(1). Relevancy, then, encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319, *2 (S.D. Fla. Nov. 1, 2001); (holding that "relevance for discovery purposes is much broader than relevance for trial purposes" and "[d]iscovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing" on the claims and defenses or otherwise on the subject matter of the action (internal citations omitted)); Order in *Viking Yacht Company*, 07-80341-CIV-Marra/Johnson at 1-4; Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").[13] Even where there is doubt as to the relevancy of propounded discovery, the discovery is still permissible. *Coker,* 177 F.R.D. at 685 (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984)).

Here, AIG seeks to either void coverage on the basis of an alleged misrepresentation in the application or deny coverage on the basis of the boat's pre-purchase condition. As discussed *supra*, with respect to the former, AIG claims that but for an alleged misrepresentation in the application, AIG either would not have insured the boat or would have charged a higher premium. With respect to the latter, AIG asserts the *Bryemere* was unseaworthy at the time it was purchased and that defects that eventually caused damage to the hull were discoverable prior to purchase. AIG's underwriting file contains all materials in AIG's possession that were

---

[12] Decisions rendered in the Fifth Circuit prior to close of business on September 30, 1981, are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[13] The "Advisory Committee Notes to Rule 26 indicate that '[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case' ... [and] cite language from a case stating that 'the Rules ... permit 'fishing for evidence as they should'''". *Jeld-Wen, Inc. v. Nebula Glasslam Internat' l, Inc.*, 248 F.R.D. 632, 639 (S.D. Fla. 2008) (internal citations omitted) (emphasis supplied by the court).

Case 0:09-cv-60551-WJZ   Document 48   Entered on FLSD Docket 05/13/2010   Page 8 of 22

CASE NO: 09-60551-CIV-ZLOCH

pertinent to (a) the *Bryemere's* condition and value at the inception of coverage and on renewal; (b) AIG's decision to insure the boat under an all-risk yacht policy; and (c) the basis and/or calculation of the premium set by AIG.  For instance, the underwriting file necessarily contains pre-purchase surveys demonstrating the condition of the vessel, information concerning the sales transaction at issue, and AIG's calculation of the premium charged to O'Neill.  Thus, the underwriting file requested by O'Neill (Req. No. 2) bears directly on matters AIG has placed at issue in this case.  Moreover, the underwriting file(s) will necessarily demonstrate that AIG aggressively marketed the Policy to O'Neill, offering a lower premium for the same coverage offered by an affiliated company,[14] and that AIG annually renewed the Policy notwithstanding the alleged purchase price misrepresentation or the carrier's assertion that the boat was not seaworthy.  The contents of the underwriting file are undeniably relevant to this case and AIG should be compelled to immediately produce same.

**AIG's Undue Burden Objection Is Unsupported and Without Merit**

AIG fails to provide any explanation or support for its undue burden objection, though it was required to timely do so.  A party has the burden of proving the basis for its objections and cannot shirk its discovery obligations through conclusory, boilerplate statements.  *See* Order in *Viking Yacht Company v. Affiliated FM Ins. Co.*, 07-80341-CIV-Marra/Johnson at 3-5 (S.D. Fla. Feb. 2, 2008) ("to even merit consideration, an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden" (internal citations omitted));[15] *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (holding that the party trying to avoid discovery "must demonstrate to the court that the requested ... information either do[es] not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else [is] of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure" (internal citations omitted)); *see also Oliver v. City of Orlando*, 2007 WL 3232227, *2 (M.D. Fla. Oct. 31, 2007); (rejecting boilerplate objections and holding that evidence or affidavits are required to support objections); *Cutrale Citrus Juices*

---

[14] O'Neill initially submitted an insurance application to New Hampshire Insurance Company, a wholly owned subsidiary of AIG, Inc.  AIG Centennial then offered the same coverage at a lower premium.
[15] A copy of the *Viking Yacht Company* Order and Viking Yacht Company's corresponding Motion to Compel are attached as Composite Exhibit C.

8

*USA, Inc. v. Zurich American Insurance Group*, 2005 WL 5177325, *1 (M.D. Fla. June 8, 2005) (finding that a generalized and inadequate objection, "by itself, falls far short of satisfying Defendants' burden of proof").

Here, AIG has failed to explain how it would be burdened by producing the underwriting file(s) applicable to the *Bryemere*.  Nor has AIG demonstrated how underwriting documents specific to the yacht at issue in this case are somehow too voluminous to warrant production. AIG chose not to substantiate its objection via affidavit or otherwise, and accordingly, its undue burden and overbreadth objections should be overruled.

**AIG's Confidentiality/Trade Secret Objection Is Inappropriate**

AIG further objects (in its initial Response) that this Request seeks confidential information and/or trade secrets.  AIG's confidentiality/trade secret objection, however, is inappropriate – it and O'Neill are not competitors.  *Seta Corp. of Boca, Inc. v. Office of Atty. Gen., Dept. of Legal Affairs*, 756 So. 2d 1093, 1094 (Fla. 4th DCA 2000) (permitting disclosure of trade secrets to non-competitors where there is no risk of competitive advantage).

The purpose of trade secret and confidentiality protection is "to prohibit a party to a suit from obtaining valuable information that could be used to its own advantage... ."  *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D. Fla. 1990) (citing *Freedom Newspapers, Inc. v. Ely*, 507 So. 2d 1180, 1184 (Fla. 2d DCA 1987)); *see also Allstate Ins. Co. v. Levesque*, 2010 WL 376777, *2 (M.D. Fla. Jan. 26, 2010) (permitting the discovery of information that did not give an insured a competitive advantage over an insurer).  The party resisting discovery and asserting the privilege carries the burden of showing that the requested material is, in fact, confidential and would cause commercial harm if disclosed.  *See, e.g., Merrill-Stevens Yacht Sales, LLC v. Fr. Lurssen Werft, GmbH & Co. KG*, 2008 WL 2690798, *2 (S.D. Fla. July 2, 2008) ("A party seeking to shield its trade secrets or other commercial information must establish that the information sought to be protected is confidential and that its disclosure might be harmful"); *Waters Edge Living, LLC v. RSUI Indem. Co.*, 2008 WL 1816418 (N.D. Fla. Apr. 22, 2008) (compelling discovery where defendant failed to establish a trade secret or move for protective order).  AIG has made no such showing, and O'Neill presents no competitive danger to AIG.

Moreover, as already discussed, the material sought is highly pertinent to the prosecution of O'Neill's Counterclaim and defense against AIG's Amended Complaint for Declaratory

Relief, such that production outweighs any counterbalancing fears by AIG that this material will serve an improper purpose. *Finnegan v. Coll*, 157 A.2d 737, 738 (N.J. Super. L. 1960) (denying trade secret privilege where requested information was important to disposition of case). In summary, AIG has made no attempt to demonstrate that the documents it has withheld constitute trade secrets, nor has AIG advanced any support whatsoever for the proposition that disclosure to O'Neill would harm AIG.[16] The documents withheld by AIG simply cannot constitute "trade secret" under Florida Statutes § 688.002(4), and any objections based on confidentiality should be overruled.[17]

## Request No. 3

The underwriting manual or manuals which pertain to the underwriting of the Policy, including any premium calculation. We agree to keep this information confidential.

## Response No. 3

Plaintiff objects to this request, as it not reasonably calculated to lead to the discovery of evidence that would be admissible as to any fact at issue in this breach of contract case.

Further, Centennial's underwriting manual and/or premium calculation is proprietary and may contain information that constitutes a trade secret or is otherwise confidential, the disclosure of which will subject Centennial to unnecessary trade disadvantage. Defendants' agreement to keep the information confidential confirms the latter objection.

## Amended Response No. 3

Objection. Plaintiff objects to Defendants' Request for Production Number Three (3) as it is overbroad, unduly burdensome, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The only matter at issue in this case is the policy of insurance (which has been produced) and the allegation Plaintiff breached such policy. As such, the underwriting file is irrelevant to this matter. *See Millzano v. State Farm Ins. Co.,* 247 F.R.D. 691 at 702-01 (S.D. Fla. 2007) (an insurer's underwriting file is irrelevant and not discoverable in the absence of an ambiguity in the insurance policy).

---

[16] As stated by the court in *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1323-1324 (S.D. Fla. 2001), when trade secret is asserted, the court must first determine whether the information constitutes a trade secret. If it does, the party seeking such discovery has to show a reasonable necessity for the information, *i.e.* "[t]he party resisting discovery has the burden to show 'good cause' for protecting discovery by showing that the information sought is a trade secret and that disclosure may be harmful." *Id.*

[17] AIG's March 26, 2010, Response argues that O'Neill's assurance to maintain the confidentiality of any information produced in response to Request No. 3 "confirms" its confidentiality/trade secret objection. On the contrary, O'Neill's assurance moots AIG's objection.

Furthermore, to the extent Defendants' Request for Production Number Three (3) seeks documents otherwise protected by the trade secret privilege, Plaintiff objects to such request and files, in conjunction with this response, its privilege log regarding these documents.

**Reason(s) To Compel Production**

Collectively, AIG objects on relevancy, undue burden and trade secret grounds.  AIG's undue burden and trade secret objections should be overruled, as AIG has failed to demonstrate, by affidavit, or otherwise, that the materials withheld would be burdensome to produce or comprise trade secrets.  *See* the authority cited in pages 8-10, incorporated herein by reference.[18]

AIG's relevancy objection likewise must be overruled.  Underwriting manuals and guidelines are relevant where, as here, the carrier denies coverage based upon the condition or price of the vessel at the inception of coverage.  This is true because AIG, like other carriers, establishes certain rules governing what risks it will insure and under what circumstances.  For instance, AIG's underwriting guidelines may say that it will not insure boats that are custom-built, manufactured outside the U.S., owned by more than three previous owners or worth more than $3 Million.  Or, they might state that we will insure custom-built yachts, but only if the boat is first inspected and tested by a qualified marine surveyor to confirm the hull is in good condition.  Similarly, underwriting manuals may describe how the premium is calculated and inform whether the purchase price of the boat has any bearing on the price charged for coverage.  Any guidelines pertaining to a boat's purchase price or condition, or the premium charged for coverage are directly relevant here.  The absence of such guidelines is similarly relevant, as AIG presumably advises its underwriters of facts or circumstances it deems material to binding coverage.  Accordingly, this Court should overrule AIG's objections and compel production.

**Request No. 4**

The complete claim file pertaining to the Claim.  All attorney-client privileged documents and documents created in anticipation of litigation may be withheld provided they are identified on a privilege log.

**Response No. 4**

Please see the documents Bates Stamp Nos. 1 – 184 voluntarily provided or identified by Centennial in response to Defendants' request for copies or identification of documents specified in Plaintiff's Rule 26 disclosure statement, sent under cover of letter dated March 22, 2010.

---

[18] AIG failed to timely raise overbreadth and undue burden objections, inserting same for the first time in its Amended Response.  Accordingly, AIG has waived these objections.  *See* Fed. R. Civ. P. 34(b)(2)(A).

Additionally, please see the documents Bates Stamp Nos. 185 – 191 attached.

**Amended Response No. 4**

Objection. Plaintiff further objects to this request to the extent that it seeks production of documents that are subject to work product and/or attorney client privilege or otherwise protected from production.[19]   Without waiving said objection see documents previously produced *(Bates Stamp Nos. 1 – 191);* see also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423-437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

**Reason(s) To Compel Production**

AIG's attorney-client privilege and work product immunity objections are misplaced; no aspect of O'Neill's First Request for Production seeks confidential communications made for the purpose of rendering legal services or created in anticipation of litigation.  Rather, O'Neill's First Request for Production seeks documents exchanged with or created by adjusters or attorneys enlisted to perform routine insurance-related tasks (*e.g.* underwriting, claim investigation, coverage determination, *etc.*).  AIG's Amended Privilege Log nevertheless lists documents that are neither protected by attorney-client privilege nor work product.

***AIG's Attorney-Client Privilege And Work Product Immunity Objections Are Improper***

Under federal law, work product immunity does not extend to "materials assembled in the ordinary course of business."  Advisory Committee Notes to Fed. R. Civ. P. 26(b)(3) (1970 Amendment).  In the insurance context, "documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and are not work product."  *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 662 (S.D. Ind. 1991); *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 2006 WL 1733857 (M.D. Fla. 2006) (citing *Harper*); *Commerce Point, Inc. v. Glencoe Ins., Ltd.,* Case No. 06-80152-CIV-Middlebrooks/Johnson (S.D. Fla. Aug. 10, 2006) (same).  Accordingly, any documents withheld by AIG that were created prior to its filing this lawsuit should be produced.  *See, e.g., Milinazzo*, 247 F.R.D. at 701 (citing *Essex Builders Group*; *Harper*).  Even AIG's January 2009 reservation of rights letter states that as of that date, AIG was still investigating the claim.  Accordingly, AIG cannot reasonably suggest that documents generated prior to this time comprise protected work product.  Accordingly, AIG's work product objection

---

[19] As with Request Nos. 2-3, *see* footnote 11, *supra*, AIG's Amended Response to this Request raises objections not asserted within its Response.  Here, AIG belatedly asserts "work product immunity" and "attorney-client privilege" objections, which should be overruled as untimely.

should be overruled with respect to Nos. 1 and 3-13 on AIG's First Amended Privilege Log.[20]

At most, the requested discovery was created to arrive at a tentative claims decision.  For example, even document No. 2 on AIG's Amended Privilege Log constitutes correspondence exchanged before AIG's April 2009 denial of coverage, and accordingly may comprise "part of a factual inquiry into or evaluation of [O'Neill's Claim], undertaken in order to *arrive at a claim decision*" and, therefore, is "not work product."  *Harper*, 138 F.R.D. at 662 (emphasis added).  The same is true for all documents listed on AIG's Amended Privilege Log, as they all pre-date AIG's April 2009 claims decision.  AIG has offered no "specific evidentiary proof of objective facts" that the referenced documents were prepared solely for use in this litigation and not simply in undertaking a routine claims investigation.  *Harper*, 138 F.R.D. at 663-664.  Accordingly, AIG's work-product immunity argument must be overruled.

Next, AIG's broad assertion of attorney-client privilege violates Florida law mandating that such objections are appropriate only when an attorney performs acts for an insurer in his or her professional capacity and not when an attorney functions as a conduit for communications or claims investigation initiatives.  *See, e.g., Southern Bell Telephone and Telegraph Co. v. Deason*, 632 So. 2d 1377, 1383-1384 (Fla. 1994);[21] *see also, e.g.,* Order in *Village Spires Condo. Ass'n, Inc. v. QBE Ins. Corp.*, Case No. 06-14191-CIV-Martinez/Lynch (S.D. Fla. Dec. 6, 2007) (refusing to recognize attorney-client privilege when an attorney is making claims and adjusting decisions);[22] *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D 645, 649-650 (S.D. Fla. 2009); *1550 Brickell Assoc. v. QBE Ins. Co*., 597 F. Supp. 2d 1334, 1337 (S.D. Fla. 2009); *Milinazzo*, 247 F.R.D. at 697; *Western Nat'l Bank of Denver v. Employers Ins. of Wassau,* 109 F.R.D. 55, 57 (D. Colo. 1985) (holding the portions of the file of a law firm retained by an insurer reflecting the factual investigation of a claim by the attorneys are not work product); *Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, 1996 WL 172148, *3 (N.D. Ill. Apr. 10, 1996)("[i]n the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply"); Kimpflen, John, J.D., *et al.*, 10 Fed. Proc. § 26:88 (West, March

---

[20] Of these, Nos. 1, 3, 5-7, and 9-13 also do not comprise attorney-client communications.

[21] State privilege law applies to this coverage dispute.  *See* Fed. R. Evid. 501.

[22] A copy of the *QBE* Order is attached to O'Neill's April 5 Letter, which is included within Composite Exhibit A.

2010) ("[a] party is entitled to discover relevant, non-privileged information from the opposing party's trial counsel" (internal citations omitted)).

Furthermore, the burden of establishing attorney-client privilege rests on the party asserting the privilege.  When that party is a corporation, its claims of privilege are subject to a heightened level of scrutiny "*to minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery.*"  *Id.* at 1383 (emphasis added).  In *Deason*, the Supreme Court of Florida held that a corporation such as AIG must demonstrate, at a minimum, that the communication would not have been made but for the contemplation of legal services and that the content of the communication relates to the legal services being rendered.  *See id.*  As such, under Florida law, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his or her professional capacity in connection with the legal services being rendered.  *Bankers Ins. Co. v. Florida Dept. of Ins.*, 755 So. 2d 729 (Fla. 1st DCA 2000) *rev. denied*, 773 So. 2d 54 (Fla. 2000) (holding no privilege exists where the attorney is "a conduit" for the insurer).

Given AIG's admission that the claim was being investigated and no coverage decision had been made as of January 2009, it follows that actions by attorneys prior to that date were performed as part of AIG's routine claims investigation, not as part of this litigation.  AIG has not sufficiently demonstrated that the entries on its Amended Privilege Log relate "to the legal services being rendered" in this case.  *Deason*, 632 So. 2d at 1383.   Accordingly, this Court should order AIG to produce documents withheld as attorney-client privileged or work product immune, or, alternatively, conduct an *in camera* inspection to make a final determination concerning discoverability of the documentation withheld by AIG.

## Request No. 5

All communications between you and us concerning the Policy, the vessel, and/or the Claim.

## Response No. 5

Please see the documents Bates Stamp Nos. 1 – 184 voluntarily provided or identified by Centennial in response to Defendants' request for copies or identification of documents specified in Plaintiff's Rule 26 disclosure statement, sent under cover of letter dated March 22, 2010.

## Amended Response No. 5

See documents previously produced *(Bates Stamp Nos. 1 – 191).* See also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423-437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

## Reason(s) To Compel Production

AIG's attorney-client privilege and work product objections are misplaced.  Request No. 5 seeks "communication between *you* and *us*."  Accordingly, this request does not seek AIG's communications with its attorneys or secreted opinion work product.  AIG's objections should be overruled and any responsive documents withheld compelled produced.

## Request No. 6

All communications between you and any third party relating to the Policy, the vessel, the Claim or the Southern District of Florida Case No. 07-61738-CIV-ZLOCH.

## Response No. 6

Plaintiff objects to this request to the extent that it seeks production of documents that are subject to work product and/or attorney client privilege or otherwise protected from production. Notwithstanding the objection, please see the documents Bates Stamp Nos. 1 – 184 voluntarily provided by Centennial in response to Defendants' request under cover of letter dated March 22, 2010.

## Amended Response No. 6

Objection. Plaintiff objects to Defendants' Request for Production Number Six (6) as it is overbroad, unduly burdensome, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it seeks production of documents that are subject to work product and/or attorney client privilege or otherwise protected from production. Notwithstanding the aforementioned objections, non-privileged communications between third parties related to the Policy, the vessel, or the claim have been produced or are being produced in conjunction with this supplemental and amended response. See documents previously produced *(Bates Stamp Nos. 1 –191);* see also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423-437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

## Reason(s) To Compel Production[23]

AIG's belated, conclusory objections should be overruled.[24]  O'Neill "should be allowed to find out why claims are denied or settled in order to determine whether or not a denial in [his] own case is justified." *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 2009 WL 2513411, *4-5 (S.D. Fla. July 13, 2009).  The information sought by this Request is probative of AIG's

---

[23] As with Request Nos. 2-4, *see* footnote 11, *supra*, AIG's Amended Response to this Request raises objections not asserted within its Response.  Here, AIG belatedly asserts "overbroad," "unduly burdensome," "immaterial," "irrelevant," and "not reasonably calculated to lead to the discovery of admissible evidence" objections, which should be overruled as untimely.

[24] As support, O'Neill refers this Court to and incorporates by reference the section addressing undue burden on pages 8-9.

evaluation of the claim and may shed light on why AIG refused to pay a penny on this covered loss.  That AIG communicated with third parties throughout the course of its claim investigation is undisputed.  To the extent documents exchanged with those parties impacted AIG's claims decision, they must be disclosed.  Such communications do not encompass attorney-client communications.  Further, as evidenced by the Amended Privilege Log, the documents withheld were created prior to AIG's decision to deny the claim and file this lawsuit.  AIG's objections should be overruled.[25]

## Request No. 7

All documents explicating the relationships between you and any third party involved with the Claim, including, but not limited to, administration agreements, correspondence, contracts, evidence of payment, and invoices, reflecting, in whole or in part, adjustment of the Claim, the basis for compensation, and the duties and/or responsibilities in relation to the Claim.

## Response No. 7

Plaintiff objects to this request as incoherent and incomprehensible.  To the extent the Plaintiff can ascertain the nature of the requested production, Centennial objects as it is not reasonably calculated to lead to the discovery of evidence that would be admissible as to any fact at issue in this breach of contract case.

## Amended Response No. 7

Objection. Plaintiff objects to Defendants' Request for Production Number Seven (7) as vague and ambiguous as to the term "explicating". Plaintiff also objects to Defendants' Request for Production Number Seven (7) as it is overbroad, unduly burdensome, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it seeks production of documents that are subject to work product and/or attorney client privilege or otherwise protected from production. Notwithstanding the aforementioned objections, non-privileged communications between third parties related to the Policy, the vessel, or the claim have been produced or are being produced in conjunction with this supplemental and amended response. See documents previously produced *(Bates Stamp Nos. 1 – 191);* see also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423-437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

---

[25] The documents sought by Request No. 6 should likewise be maintained by AIG in its claim and underwriting file.  Accordingly, we refer the Court to and incorporate by reference Section II.A and the Reasons to Compel Production under Request Nos. 2 and 4.

**Reason(s) To Compel Production**[26]

AIG raised two timely objections – relevance and vagueness.  The latter was resolved during the conferral process, as O'Neill seeks documents that will reveal the scope and nature of AIG's relationship, if any, with third parties that investigated or otherwise assisted AIG with the claim.  For instance, AIG retained and directly compensated Mr. O'Neill's surveyor under the guise that same would accelerate adjustment of the claim.  The opposite resulted.  O'Neill is entitled to discover any contracts, agreements, and/or payments exchanged between AIG and Mr. Knowles.  The same holds true for any other third party retained by AIG in connection with O'Neill's claim.  Any internal documents describing these relationships should accordingly be compelled produced.[27]

**Request No. 10**

All documents generated or received by you that define, construe, interpret, comment on the interpretation of, or discuss the meaning or application of Policy terms or provisions relating to "latent defect," "market value," "manufacturing and design defects," and "inherent vice." Such documents might include, without limitation, claims manuals, training materials, memoranda, underwriting documents, sales and marketing materials, actuarial documents, articles published in trade or legal periodicals, articles written for claims professionals or seminars, and home office directives and bulletins.

**Response No. 10**

Please see Plaintiffs response to Request Nos. 2, 3 and 4. In addition, Plaintiff objects to this request as irrelevant to the interpretation of the insurance Policy that is the subject of this declaratory action.

Furthermore, Plaintiff objects to this request as overbroad and/or burdensome.

Notwithstanding the foregoing objections, the terms "latent defect" and "market value" are included in the Definitions section of the Yacht Policy.  Plaintiff knows of no other responsive documents.

---

[26] As with Request Nos. 2-4 and 6, *see* footnote 11, *supra*, AIG's Amended Response to this Request raises objections not asserted within its Response. Here, AIG belatedly asserts "unduly burdensome," "work product immunity," and "attorney-client privilege" objections, which should be overruled as untimely.

[27] O'Neill is unable to ascertain whether any entries on AIG's Amended Privilege Log are responsive to this request.  Moreover, given the nature of the documents, they may or may not be kept in AIG's claim file.  Accordingly, we respectfully request that this Court conduct an in camera inspection of the documents listed on AIG's First Amended Privilege Log and require AIG to confirm that no other responsive documents exist.

**Amended Response No. 10**

Objection. Plaintiff objects to Defendants' Request for Production Number Three (3) as it is overbroad, unduly burdensome, immaterial, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The only matter at issue in this case is the policy of insurance (which has been produced) and the allegation Plaintiff breached such policy. As such, the underwriting file is irrelevant to this matter. *See Millzano v. State Farm Ins. Co.,* 247 F.R.D. 691 at 702-01 (S.D. Fla. 2007)(an insurer's underwriting file is irrelevant and not discoverable in the absence of an ambiguity in the insurance policy).

Furthermore, to the extent Defendants' Request for Production Number Three (3) seeks documents otherwise protected by the trade secret privilege, Plaintiff objects to such request and files, in conjunction with this response, its privilege log regarding these documents.

See also, Plaintiff's Response to Requests for Production Numbers Two (2) and Three (3) above.

Notwithstanding the aforementioned objections, see documents previously produced *(Bates Stamp Nos. 1 – 191);* see also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423-437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

**Reason(s) To Compel Production**

Collectively, AIG raises conclusory objections based on relevance and burden, but it has also asserted a belated conclusory trade secret objection. The carrier's overbreadth and trade secret objections are not substantiated by affidavit or otherwise and should accordingly be overruled for the reasons set forth in pages 8-10 of this memoranda. Moreover, contrary to AIG's relevance objection, underwriting guidelines and interpretive materials are relevant in a coverage lawsuit where – as here – there is an issue regarding policy interpretation. And the very case cited by AIG demonstrates as much. *See, e.g., Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 703 (S.D. Fla. 2007) (recognizing that where policy terms are potentially ambiguous, "underwriting related documents could be used to resolve that ambiguity.") AIG cannot argue that certain policy exclusions act to preclude coverage on one hand and argue on the other hand that O'Neill should be prevented access to materials discussing the scope and force of such exclusions. Indeed, federal courts routinely order the production of such documents at the discovery stage of litigation. *See, e.g.,* Order in *Viking Yacht Company,* 80341-CIV-Marra/Johnson at 4-5; *see also Young v. Liberty Mut. Ins. Co.,* 1999 WL 301688 (D. Conn. 1999) (allowing discovery of parol evidence to aid the requesting party in interpreting ambiguous contract language); *Castillo v. State Farm Florida Ins. Co.,* 971 So. 2d 820, 823 (Fla. 3d DCA 2007) ("when the terms of the contract are ambiguous and susceptible to different interpretations, parol evidence is admissible to explain, clarify or elucidate the ambiguous term")

(internal citations omitted)).   In *Viking Yacht Company*, also a breach of contract case, Magistrate Judge Johnson held as follows:

> Viking's Motion as it relates to these Requests is granted.   Contrary to AFM's position, drafting history and extrinsic evidence of interpretive materials is discoverable at this early stage of the litigation when questions concerning ambiguity have not been resolved.   *See, e.g., Nestle Food Corps. v. Aetna Cas. And Sur. Co.*, 135 F.R.D. 101, 105-106 (D.N.J. 1990); *Travelers Cas. And Sur. Co. v. RIBI Immunochem Research, Inc.*, 108 P.3d 469, 481 (Mont. 2005).   Even *Dimmit Chevrolet, Inc. v. Southeastern Fidelity Ins. Co.*, 636 So. 2d 700 (Fla. 1993), relied upon by AFM, supports Viking's position, holding that it is only *after* the court determines the policy language is unambiguous, that it is inappropriate and unnecessary to consider drafting history.   *See also Young v. Liberty Mutual Ins. Co.*, 1999 WL 301688 (D. Conn. 1999) (noting that "[a]t this stage, the Court does not evaluate whether information ultimately will be admissible, it merely decides whether information is discoverable.   To facilitate a full understanding of the meaning of an insurance policy's terms, many courts have allowed discovery of the drafting history and interpretations of ... policy language, reinsurance information, and other insured's claims.").

February 07, 2008 Order at 4-5 (emphasis supplied by the court).

In this case, the Policy excludes from coverage manufacturing defects, yet fails to define what constitutes a "manufacturing defect."   *See* Policy at 4, 10.[28]   It then expressly provides coverage for "latent defects," which necessarily includes latent manufacturing defects. But AIG says something else.   Here, AIG ignores the Policy's latent defect provision, in favor of relying on the manufacturing defect exclusion to deny coverage.   Interpretive materials bearing on these issues are highly relevant, as they may demonstrate that AIG is taking a position inconsistent with its (a) own interpretation of these provisions; and (b) underwriting guidelines.   Moreover, AIG undoubtedly considered its exposure to claims under this valuable latent defect coverage when it decided to underwrite and set a premium for this coverage.   Documents memorializing this analysis and decision should be produced.   In summary, at this stage of the proceedings, the discovery of interpretive materials should be permitted and AIG's objections should be overruled.

**Request No. 12**

All documents concerning the condition and value of the vessel.

---

[28] A copy of the Policy is attached as Exhibit D for this Court's convenience.

**Response No. 12**

Plaintiff objects to this request, as it is vague and imprecise, and fails to specify any time frame "for the condition and value of the vessel". To the extent Plaintiff understands the request, please see the documents Bates Stamp Nos. I - 184 voluntarily provided or identified by Centennial in response to Defendants' request for copies or identification of documents specified in Plaintiffs Rule 26 disclosure statement, sent under cover of letter dated March 22, 2010.

**Amended Response No. 12**

Objection. Plaintiff objects to Defendants' Request for Production Number Twelve (12). to the extent this request seeks information and/or documents protected by the attorney-client and/or word product privilege.

All documents responsive to Defendants' Request for Production Number Twelve (12) and in the possession of the Plaintiff at this time have been produced. *See (Bates Stamp Nos. 1 –191);* see also documents produced herein *(Bates Stamp Nos. 264-267; 274-275; 278-417; 423437; 439-448; 450-604;)* Privilege Log served April 12, 2010.

**Reason(s) To Compel Production**[29]

AIG timely objected on grounds of vagueness and overbreadth. The former was cured in the conferral process. The latter requires no cure. To the extent AIG possesses documents that describe the condition of the boat or its market value/purchase price, such documents are relevant. AIG has placed the vessel's condition and value at issue, as further described in the Reasons to Compel Production responsive to Request No. 2. Accordingly, that section is incorporated herein by reference.

**III.    Conclusion**

The discovery sought by O'Neill is directly relevant to the claims and defenses in this case. Accordingly, O'Neill must be permitted such discovery. AIG has offered no justification for its objections.

WHEREFORE, Defendants/Counter-Plaintiffs, J. Brian O'Neill and Carolina Acquisition, LLC respectfully request that this Court enter an Order (a) overruling the objections raised by Plaintiff/Counter-Defendant, AIG Centennial Insurance Company, with respect to O'Neill's First Request for Production; (b) compelling AIG's immediate production of all withheld discovery that is the subject of O'Neill's First Request for Production; and (c) awarding any further relief this Court deems equitable, just and proper.

---

[29] As with Request Nos. 2-4, 6-7, and 10, *see* footnote 11, *supra*, AIG's Amended Response to this Request raises objections not asserted within its Response. Here, AIG belatedly asserts "work product immunity" and "attorney-client privilege" objections, which should be overruled as untimely.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)</u>

Pursuant to Local Rule 7.1(A)(3) the undersigned counsel conferred with counsel for Plaintiff on numerous occasions between April 5, 2010 and April 23, 2010 (as evidenced by Composite Exhibit A) in a good faith effort to resolve the issues, but Plaintiff opposes the relief sought herein.

Respectfully submitted,

**VER PLOEG & LUMPKIN, P.A.**
100 S.E. Second Street, Thirtieth Floor
Miami, FL 33131-2158
(305) 577-3996
(305) 577-3558 *facsimile*

By:     /s/ Meghan C. Moore
**Meghan C. Moore**
Florida Bar No. 0668958
mmoore@vpl-law.com
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Jeffrey L. Greyber**
Florida Bar No. 0041103
jgreyber@vpl-law.com
*Counsel for J. Brian O'Neill and
Carolina Acquisition LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Meghan C. Moore
**Meghan C. Moore**

**SERVICE LIST**
**CASE NO: 09-60551-CIV-ZLOCH**

Andrew W. Anderson, Esq.
aanderson@houckanderson.com
Charles S. Davant, Esq.
cdavant@houckanderson.com
Lawrence Jacobson, Esq.
ljacobson@houckanderson.com
**HOUCK ANDERSON, P.A.**
200 South Biscayne Blvd.
Suite 300
Miami, FL 33131-2332
Phone: (305) 372-9044
Fax: (305) 372-5044
*Counsel for AIG Centennial*
*Insurance Company*

J. Randolph Liebler, Esq.
jrl@lgplaw.com
Christopher M. Drury, Esq.
cmd@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, FL 33130
Phone: (305) 379-0400
Fax: (305) 379-9626
*Counsel for Bank of America, N.A.*