UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 09-60551-CIV-Zloch/Rosenbaum

AIG CENTENNIAL INSURANCE
COMPANY,

      Plaintiff,

vs.

J. BRIAN O'NEILL, CAROLINA
ACQUISITION LLC and
BANK OF AMERICA N.A.,

      Defendants.              /

## MEMORANDUM IN OPPOSITION TO J. BRIAN O'NEILL'S AND CAROLINA ACQUISITION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

COMES NOW, Plaintiff/Counter-Defendant, AIG CENTENNIAL INSURANCE COMPANY ("Centennial"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, files this, its Memorandum in Opposition to J. Brian O'Neill's and Carolina Acquisition LLC's (collectively "Defendants") Motion to Compel Production of Documents responsive to their First Request for Production [D.E. 48] and respectfully requests this Court deny Defendants' Motion and in support of such denial states as follows:

### I.     INTRODUCTION

Centennial filed this declaratory action requesting this Court to determine whether Centennial has any liability under a policy of marine insurance for the M/V "BREYMERE". Centennial vehemently denies engaging in "protracted investigation" and "unnecessary delay" in a decision on coverage and will otherwise decline Defendants' invitation to engage in a lengthy and unnecessary recitation of the facts – replete with inflammatory rhetoric and editorial comment – which gave rise to the filing of this action. *See* Defendants' Motion [D.E. 48, p.1].

1

Instead, Centennial will address the narrow discovery issues before this Court presented by Defendants' Motion.

Defendants filed a twenty-two (22) page Motion to Compel coupled with one-hundred forty-four (144) pages of exhibits (166 pages total) in an effort to compel Centennial to produce just eighty-five (85) pages of documents. Centennial has already produced all documents in its possession and responsive to Defendants' twenty-one (21) broad categories of document requests save the eighty-five (85) documents referenced in its privilege log and its objections as to privileged underwriting materials. To date, Centennial has produced some One-Thousand Seven-Hundred Twenty-Eight (1,728) pages of responsive documents. To be fair, at the time of Defendants' filing, Centennial had already produced five-hundred nineteen (519) pages of responsive documents, and produced an additional One-Thousand Two-Hundred Nine (1,209) documents as part of its continuing obligation to supplement its discovery responses as documents came into its possession.

For all of Defendants' fanfare and overblown allegations, Centennial has merely withheld its irrelevant and confidential underwriting file and various privileged correspondence with outside counsel that were clearly prepared in anticipation of litigation. All have been sufficiently identified in its First Amended Privilege Log. *See* First Amended Privilege Log attached hereto as Exhibit "A". For the reasons set forth herein, Centennial respectfully requests this Court to sustain its objections and deny Defendants' Motion to Compel [D.E. 48].

## II. MEMORANDUM OF LAW

Centennial filed a legally sufficient privilege log in conjunction with its Supplemental and Amended Responses to Defendants' Requests for Production. As set forth below, Defendants' attacks as to the sufficiency of the privilege log are baseless and serve to highlight its unfounded Motion to Compel. Defendants seek to have Centennial produce just fifty (50)

pages of its underwriting file and thirty-five (35) pages of privileged communication. Furthermore, Centennial's objections to Defendants' discovery requests are well founded and must be sustained by this Honorable Court. As such, Centennial respectfully requests this Court deny Defendants' Motion to Compel in its entirety.

### a.   Centennial's Privilege Log is Legally Sufficient

Local Rule 26.1 (g)(3)(B) requires a party, when claiming privilege in response to a production demand, to: (1) assert the privilege in the objection to the document demand and identify the nature of such privilege; and (2) to provide details of the contents of the documents unless divulgence of such information would cause disclosure of the allegedly privileged information. Centennial has complied with each requirement of this Court's local rules and, thus, its privilege log is sufficient.

First, in response to Defendants' Requests for Production Numbers four (4), six (6), seven (7), and twelve (12) Centennial asserted an objection to the extent the document requests sought information protected by the attorney-client and/or work product privilege. Centennial did so in its objections to these requests for production as required by Local Rule 26.1(g)(3)(B). Further, in response to Defendants' Requests for Production Numbers two (2), three (3), and ten (10) Centennial asserted an objection as to relevancy as well as a potential invasion of a confidential or trade secret privilege. Centennial similarly asserted this privilege in its objections to the production demand as required by Local Rule 26.1 (g)(3)(B)(i). Therefore, Centennial fully complied with the first prong of its obligation in asserting privilege as set forth by this Court's local rules.

Second, for documents two (2) through thirteen (13) Centennial's privilege log identifies the type of document, general subject matter of the document, the date of the document and other information sufficient to identify the document. Therefore, with respect to items 2 through 13,

Centennial's privilege log fully complies with Local Rule 26.1(g)(3)(B)(ii).  Centennial admits it did not provide a detailed description as to the contents of its underwriting file.  Centennial respectfully contends, as set forth below, that such an identification of what documents are contained therein would violate the confidentiality of its file.  Local Rule 26.1(g)(3)(B)(ii) only requires identifying information when divulgence of such information would not cause disclosure of the allegedly privileged information.  As such, Centennial fully complied with this Court's local rules with respect to identification of the underwriting file in its privilege log.  In the event this Court does not agree with Centennial's contention as to the sufficiency of its privilege log it respectfully requests it be afforded an opportunity to supplement its log as this Court deems appropriate.

### b. Documents identified in Centennial's Privilege Log are Privileged, Irrelevant, or both

The various documents identified in numbers two (2) through thirteen (13) are protected from disclosure under the attorney-client or work product privilege.  The underwriting file (even if it was relevant) is similarly protected as a confidential trade secret.  Therefore, Centennial's objections as to disclosure of these materials must be sustained.

### i.      Work Product and Attorney-Client Privilege

Centennial is cognizant of Federal Rule of Civil Procedure 26(b)'s broad definition of discoverable materials allowing parties to "obtain discovery regarding any **non-privileged** matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(emphasis added).  "The scope of discovery is limited, however."  *Johnson v. Geico General Insurance Co.*, 2007 WL 3344253 (S.D. Fla. 2007).  "Ordinarily, a party may not discovery documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The documents identified in paragraphs 2 through 13 of

4

Centennial's First Amended Privilege Log were all prepared in anticipation of litigation by either the law firm of Houck Anderson P.A. or Centennial.  Furthermore, work product protection notwithstanding, the documents identified in paragraphs 2, 4, and 8 – 12 constitute privileged attorney-client communications which must similarly be protected from discovery.  Therefore, these must be kept confidential and Defendants' Motion to Compel production of these documents denied.

## 1.  Work Product

"The work product doctrine, first articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), has been codified under Fed. R. Civ. P. 26(b)(3), protecting the disclosure of materials prepared in anticipation of litigation by a party or by its representative, which includes its attorney, consultant, surety, indemnitor, insurer, or agent." *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645 (S.D. Fla. 2009)(internal quotations omitted).  "The doctrine reflects the strong public policy underlying the orderly prosecution and defense of legal claims." *Id.* (citing *United Kingdom v. United States*, 238 F.3d 1312 (11th Cir. 2001)).  Centennial recognizes it must anticipate litigation at the time the documents were drafted for these protections to apply. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 at 698 (S.D. Fla. 2007).  "Materials or documents drafted in the ordinary course of business are not protected." *Id.* at 698.  The documents identified in Centennial's privilege log were all prepared in anticipation of litigation by Centennial or its attorneys.  Therefore, they are not discoverable under Federal Rule of Civil Procedure 26(b)(3).

Defendants' attempt to argue Centennial only reasonably anticipated litigation as of January 2009 blatantly ignores the substance of the numerous letters sent (and produced as part of Centennial's Rule 26 disclosures in this action) to them outlining why the manufacturing defects in the vessel were not covered under the subject marine insurance policy.  This position

was stated directly to the Defendants as early as October 30, 2007 and Centennial, having set forth the reasons why the vessel was not built to design specifications and corresponding through Defendants' attorney, reasonably anticipated litigation thereafter.

First, contrary to Defendants' assertions, a reservation of rights letter was sent to Defendants, through their attorney Mary Kay Brown, as early as on July 25, 2007. *See* July 25, 2007 Reservation of Rights Letter attached hereto as Exhibit "B". Next, on October 30, 2007 Centennial advised the Defendants, by and through their attorney, of the numerous structural deficiencies in the vessel. *See* October 30, 2007 letter to Defendants attached hereto as Exhibit "C". In an apparent recognition of Centennial's coverage position from the numerous experts who inspected this vessel in Rhode Island in the summer of 2007, Defendants elected not to file a formal claim with Centennial at that time but instead chose to file a lawsuit in Florida State Court on October 29, 2007 which was subsequently removed to this District Court on November 30, 2007. *See* Notice of Removal attached hereto as Exhibit "D". Centennial's position was reiterated to Defendants on March 21, 2008 through a correspondence sent to Defendants from their insurance agent. *See* March 21, 2008 correspondence attached hereto as Exhibit "E". This correspondence specifically states: "AIG Private Client Group believes that there is no coverage for this matter." *Id.*

Finally, on December 23, 2008 during a meeting between Centennial and Defendants, Centennial again reiterated its coverage position as previously set forth in the correspondence referenced above. In response Centennial's stated coverage position, Defendant J. Brian O'Neill, angered by Centennial's coverage position, went on a profane and obscenity laced tirade, shouting at Centennial's representatives, insulting them personally and threatening, in fact, promising, to sue Centennial. While eventual litigation involving Centennial was a virtual certainty once O'Neill had filed suit against the sellers and brokers, if there had previously been

HOUCK ANDERSON, ATTORNEYS AT LAW

any question as to the pendency of litigation prior to this meeting, O'Neill's profane promise to sue Centennial makes it clear that litigation was anticipated by Centennial as of December 23, 2008.

As set forth above, Centennial reasonably anticipated litigation with the Defendants after it first notified the Defendants through its October 30, 2007 letter.  The documents identified in paragraphs 2 through 13 of Centennial's privilege log are work product protected by the Supreme Court's decision in *Hickman v. Taylor* and its progeny.  Therefore, Defendants' Motion to Compel Centennial to produce these documents must be properly denied.

Furthermore, the document identified in paragraph two (2) of Centennial's privilege log is a twenty (20) page coverage opinion sent by the undersigned law firm to its client, Centennial, after the December 23, 2008 meeting during which O'Neill promised to sue Centennial.  Not only is this document protected from discovery under the fact work product privilege above and the attorney-client privilege discussed *infra*, it is confidential and privileged opinion work product entitled to the highest level of protection.

"[T]here are two recognized forms of work product under Fed. R. Civ. P. 26(b)(3): fact work product, protecting information gathered in anticipation of litigation [referenced above], and opinion work product, consisting of an attorney's mental impressions, legal theories, and/or opinions."  *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645 (S.D. Fla. 2009).  The twenty (20) page correspondence referenced in paragraph two (2) of Centennial's First Amended Privileged Log contains the undersigned's mental impressions, legal theories, and opinions regarding the instant litigation and is quintessential opinion work product.  As set forth by the Eleventh Circuit, opinion work product enjoys nearly absolute protection.  "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."  *Cox v. Admn'r U.S. Steel & Carnegie*, 17 F.3d 1386 at 1421-22

(11th Cir. 1994)(quoting *Hickman v. Taylor*, 329 U.S. 495).   Therefore, this Court must deny

Defendants' Motion to Compel these documents as well.

## 2.   Attorney-Client Privilege

In addition to being documents prepared in anticipation of litigation and protected from

discovery by the auspices of Fed. R. Civ. P. 26(b)(3)(A) the documents identified in paragraphs

2, 4, and 8 – 12 are protected as confidential and privileged attorney-client communications.

"According to Federal Rule of Evidence 501, the privilege of a witness…shall be governed by

the principles of the common law as they may be interpreted by the courts of the United States in

the light of reason and experience."   *Cox v. Admn'r U.S. Steel & Carnegie*, 17 F.3d 1386 at

1414.

"The attorney-client privilege, 'the oldest of the privileges for confidential

communications known to the common law,' *United States v. Zolin*, 491 U.S. 554, 562, 109

S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989)(quoting *Upjohn Co. v. United States*, 449 U.S. 383,

389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)), protects the disclosures that a client makes to

his attorney, in confidence, for the purpose of securing legal advice or assistance."   *Cox v.

Admn'r U.S. Steel & Carnegie*, 17 F.3d 1386 at 1414 (11th Cir. 1994)(citing *In re Grand Jury*

(G.J. No. 87-03-A), 845 F.2d 896, 897 (11th Cir.1988)).   The privilege is "[b]ased on the theory

that sound legal advice or advocacy…depends upon the lawyer's being fully informed by the

client, the privilege is designed to encourage full and frank communication between attorneys

and their clients and thereby promote broader public interests in the observance of law and

administration of justice."   *Id.*(quoting *Upjohn*, 449 U.S. at 389)(internal quotations omitted).

The documents identified in paragraphs 2, 4, and 8 – 12 in Centennial's First Amended Privilege

Log were made by and/or between Houck Anderson P.A. (attorney) and Centennial (client) for

purposes of securing legal advice or assistance.   These communications were made to obtain

legal advice in Houck Anderson P.A.'s professional capacity.  They were not – as Defendants' would have this Court believe – made by an attorney making claims and adjusting decisions.  As such, they must be shielded from disclosure and Defendants' Motion to Compel denied.

### ii.     Underwriting File

Defendants also seek production of Centennial's irrelevant and privileged underwriting file.  The only issue before this Court for adjudication is whether the policy of marine insurance provides coverage for losses claimed by J. Brian O'Neill and Carolina Acquisitions, LLC.  That determination will turn almost entirely on whether the damage caused to the vessel for which Defendants seek to recover the cost of repairs were manufacturing defects or latent defects. That is, were the defects latent such that they were not discoverable by ordinary observation or known methods of testing, as defined in the policy.  Defendants have already taken the position in parallel litigation that these defects were sufficiently detectable by ordinary observation and customary testing that the previous owners and brokers knew or should have known of them and negligently misrepresented the structural condition of the vessel to Defendants.[1]  Thus, the contents of the underwriting file have nothing to do with the central issue of this litigation. Properly absent from the pleadings, specifically Defendants' Counterclaim, is an allegation Centennial acted in "bad faith."  In a simple coverage dispute an underwriting file is irrelevant. Furthermore, the file contains confidential and privileged information.  Therefore, Defendants' Motion to Compel production of these documents must similarly be denied.

### a)  Relevancy

Centennial's underwriting file is irrelevant to the only determination to be made by this Court in this action, *to wit*, whether the policy of marine insurance provides cover for its insureds, J. Brian O'Neill and Carolina Acquisition, LLC.  Defendants' Requests for Production

---

[1] *See Carolina Acquisition, LLC v. Double Billed, LLC et al*, Case No. 07-61738-CIV-ZLOCH.

Numbers two (2), three (3), and ten (10) seek production of Centennial's underwriting file and/or its materials.  *See* Motion to Compel [D.E. 48, pp. 5, 10, and 17].  Contrary to Defendants' assertions and as supported by the decisions cited below, the underwriting materials are not relevant to this action.

It is axiomatic, that in **breach of contract** cases involving first-party insurance claims (such as this one) underwriting files are generally **not discoverable**.  *See Milinazzo v. State Farm Insurance Company*, 247 F.R.D. 691 at 702-03 (S.D. Fla. 2007); *Johnson v. Geico General Ins. Co.*, No. 07-80310-Ryskamp, 2007 WL 3344253 (S.D. Fla. November 7, 2007); *Champion Int'l Corp v. Liberty Mut. Ins Co.*, 129 F.R.D. 63 (S.D.N.Y. 1990).  Centennial recognizes certain courts have allowed discovery of underwriting materials if an insured makes a "prima facie showing that material provisions of the policy are ambiguous." *Milinazzo*, 247 F.R.D. 691 at 703.  In the case *sub judice* there are no ambiguities in the policy and Defendants have failed to make the requisite prima facie showing of such an ambiguity.  As such, the underwriting file and its materials responsive to Requests for Production 2, 3, and 10 are irrelevant and Defendants' Motion must be denied accordingly.

Defendants assert such materials are relevant by first trying to utilize Centennial's allegations regarding a material misrepresentation and invocation of the doctrine of *uberrimae fidei* and then loosely asserting the insurance policy is ambiguous in an attempt to pry open Centennial's underwriting file.  *See* Motion to Compel [D.E. 48, pp. 6-8; 17-19].  With respect to the latter, and as set forth in detail in its Complaint, the loss complained of is not a covered peril.  *See* Amended Complaint [D.E. 31].  In fact, the loss is specifically excluded by the subject insurance policy:

> We do not cover any loss, damage, claim or expense caused directly or indirectly, in whole or in part by any defect in design or manufacture of the **yacht** or any additional or replacement part, component or system of the **yacht**.

10

*Id*. at ¶¶ 58 – 60.  Defendants, in their motion, assert the insurance policy fails to define what constitutes a "manufacturing defect".  *See* Motion to Compel [D.E. 48, p. 19].  Then, Defendants attempt to generate an ambiguity by boldly asserting the policy covers latent defects which "necessarily includes latent manufacturing defects."  *Id*. at p. 19.  To be sure, the policy does **not** cover losses caused by manufacturing defects – a fact which is patently obvious from a reading of the policy attached to Defendants' Motion.  *See* Motion [D.E. 48, Ex. D. at 10].  The policy does cover physical loss or damage resulting or caused by a latent defect.  *Id*.  The policy does not cover damage caused by manufacturing or design defects, or the cost of repairing the latent defects themselves.  *Id*.  The mere fact the policy provides cover for damages caused by latent defects does not equate to an ambiguity in the manufacturing and/or design defect exclusion referenced above.  The Defendants' blanket assertions of ambiguity are not sufficient evidence to support a prima facie case as required under *Milinazzo*.

The issue is a straight forward and simple one. Was the damage caused to the vessel for which recovery is now sought the result of a manufacturing defect or a latent defect? Stated another way, were the defects that caused the damage latent?  Both the issue and the language are straight forward and simple.  The major convolution arises from the efforts of Defendants to change the evidence from their other litigation which they maintained clearly demonstrated that the defects in the vessel were so obvious that the sellers and brokers knew or should have known of them into defects that were so hidden that they could not be detected either by ordinary observation or by known methods of testing.  There is no ambiguity in the policy language and Centennial's underwriting file is irrelevant.  The only ambiguity is in the contrary positions being taken by Defendants in the two different litigations.

Defendants also attempt to gain access to Centennial's underwriting file by arguing (while ignoring the *Milinazzo* standard) it is relevant as the file will contain documents regarding

the value and condition of the vessel at the inception and renewal of coverage.  *See* Motion to Compel [D.E. 48, pp. 7-8].  First of all, if Defendants are genuine in their statement, this exact request was made in their Request for Production No. 12.  *See* Motion to Compel [D.E. 48, pp. 19-20].  As set forth below, though the request is somewhat vague, all documents in response thereto have already been produced in this litigation.  Therefore, Defendants' relevancy argument with respect to the underwriting file in this regard is moot and unfounded.

As examples in support of the alleged relevancy, Defendants cite to the pre-purchase survey, sales documents, and calculations of premiums as relevant documents possibly within the underwriting file.  Defendants' use of the pre-purchase survey and sales documents (even if they are in the underwriting file) as examples is misleading as Thomas Price's (the pre-purchase surveyor) March 22, 2007 survey (both versions) have been produced multiple times by Centennial in this litigation as well as the sales transaction documents.

Furthermore, how or why Centennial calculated the insurance premium for the subject policy is wholly irrelevant to whether the vessel was unseaworthy at the inception of the risk or whether the manufacturing defects in the vessel are excluded in the policy.  While this type of document (even if it was in the underwriting file) could be marginally relevant to prove the Defendants' misrepresentation was material, a document regarding whether or not Centennial's premium would have changed could not exist in the underwriting file as Centennial (obviously) did not know about the misrepresentation at the time of the premium calculation.  The misrepresentation itself is one of the bases for the instant lawsuit.

Therefore, arguments of Defendants' notwithstanding, the underwriting file is irrelevant to any issue to be adjudicated by this Court and Defendants' Motion to Compel such a file must be denied accordingly.

### b) Privilege

Even if the underwriting file was relevant and made a fact of consequence more or less likely, the contents of the file are a confidential and privileged trade secret. Therefore, discovery of such must be prevented by this Court and Defendants' Motion to Compel denied. Under Florida Statute § 90.506:

> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs      disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require. The privilege may be claimed by the person or the person's agent or employee.

Under Florida law, a trade secret is defined as "a formula, pattern, compilation, program, device, method technique, or process" that derives actual or potential independent economic value "from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" when it is the subject of reasonable efforts under the circumstances to maintain its secrecy. Fla. Stat. § 688.002(4). Defendants do not dispute materials such as Centennial's underwriting file (Request for Production No. 2), underwriting manual (Request for Production No. 3), and other various claims manuals and documents (Request for Production No. 10) would constitute confidential trade secrets. *See* Motion to Compel [D.E. 48, pp. 9-10]. It is indisputable, then, that documents relating to how or why Centennial underwrites certain policies and handles certain claims are protected by the trade secret privilege.

Defendant, J. Brian O'Neill, is an accomplished businessman whose net worth has been described in testimony as being in excess of $4 Billion. Certainly the threat of disclosure of such confidential materials by Defendant to Centennial's competitors exists. Indeed, disclosure to O'Neill himself could put Centennial at a competitive disadvantage in future insurance

transactions.   In addition, the law firm of Ver Ploeg & Lumpkin, Defendants' lawyers, are preeminent practioners in the field of first-party insurance coverage and disclosure of the materials requested and identified in Defendants Requests for Production 2, 3, and 10 could allow them an unfair advantage in future unrelated litigation.   As such, the Defendants could obtain a competitive advantage over Centennial as a result of such disclosure and Defendants Motion to Compel production of these documents must be denied accordingly.

### c.  Centennial's objections to Defendants' specific discovery requests must be sustained

Centennial's objections to each of Defendants' discovery requests must be sustained and/or its responses thereto deemed sufficient.   For the sake of good order, Centennial will address each individual request in the order they appear in Defendants' Motion.

### i.  Request for Production No. 1

Centennial has fully complied with Defendants' Request for Production No. 1 by producing any and all certified copies of insurance policies with Centennial.   Centennial is otherwise unaware of the existence of insurance policies by and/or between J. Brian O'Neill/Carolina Acquisitions, LLC and AIG Centennial Insurance Company, therefore, it is unclear exactly what Defendants seek production of.   As set forth above and admitted by Defendants, Centennial has complied with the request by producing a certified copy of the *Breymere* policy.   Therefore, Defendants' Motion to Compel must be denied as it was moot as to this request even before the April 13, 2010 motion was filed.

### ii.  Request for Production No. 2

As discussed *supra*, the underwriting file pertaining to this policy is irrelevant and privileged and Centennial's objections must be sustained in this regard.   Furthermore, these requests are overbroad as they seek documents which cannot reasonably be calculated to lead to the discovery of admissible evidence.   Further still, production of an irrelevant and privileged

14

underwriting file would be burdensome for Centennial as it would be forced to produce documents protected by the trade secret privilege.  Therefore, Centennial's objections must be sustained and Defendants' Motion to Compel denied accordingly.

### iii.    Request for Production No. 3

As set forth above, the underwriting manual and manuals are irrelevant and privileged and must be protected from production.  The request for production of such documents is overbroad and unduly burdensome as the request seeks production of documents not reasonably calculated to lead to the discovery of admissible evidence.  Therefore, Centennial's objections must be sustained and Defendants' Motion denied.

### iv.    Request for Production No. 4

To be clear, the complete claim file has been produced in this litigation save any privileged documents identified in Centennial's First Amended Privilege Log.  All documents identified therein are protected by either the work product (fact or opinion) and/or attorney-client privilege.  Defendants' Request for Production No. 4 does not request privileged documents, therefore, Defendants' Motion to Compel production of the claims file is unfounded and moot.

### v.    Request for Production No. 5

Centennial has produced all documents in response to Defendants' Request for Production No. 5 without objection.  Therefore, Defendants' Motion is unfounded and should be denied.

### vi.    Request for Production No. 6

Centennial's objections to this broad discovery request should be sustained. For instance, as phrased, this discovery request could encompass documents which are otherwise protected from disclosure under Fed. R. Civ. P. 26(b)(4)(B) or documents which are irrelevant to this proceeding (such as those regarding a different case).  Objections notwithstanding, Centennial

has produced all known (non-privileged) documents in its possession and Defendants' Motion to Compel must be denied.

### vii.    Request for Production No. 7

All non-privileged documents responsive to this request have been produced in the 1,728 pages of documents produced by Centennial thus far.  Nonetheless, Centennial's objections must be sustained as the term "explicating" is vague and ambiguous – a fact confirmed by Defendants' explanation of its meaning.  Centennial has an ongoing obligation to respond to this discovery request, thus, to the extent this request seeks information protected by the attorney-client and/or work product privilege it requests its objection be further sustained.

### viii.    Request for Production No. 10

As set forth in Centennial's initial response, it knows of no other responsive documents which define the identified terms other than documents already produced in this litigation. Furthermore, and as discussed at length above, to the extent this request seeks "without limitation, claims manuals, training materials, memoranda, underwriting documents, sales and marketing materials, actuarial documents, articles published in trade or legal periodicals, articles written for claims professionals or seminars, and home office directive and bulletins" the request not only calls for irrelevant and/or privileged information, but is patently overbroad and burdensome.  Therefore, Centennial's objections to this request must be sustained

### ix.    Request for Production No. 12

Contrary to Defendants' assertions, the vagueness of this request was not "cured" in the "conferral process" as the request was not amended in any way and remains vague and imprecise inasmuch as its fails to specify any time frame for the condition and value of the vessel. Nonetheless, all (non-privileged) known documents regarding the condition and value of the vessel have been produced in this litigation and Defendants' Motion must be denied accordingly.

### III.    CONCLUSION

For the reasons set forth herein, Centennial requests this Court sustain its objections to Requests for Production 1, 2, 3, 4, 5, 6, 7, 10, and 12 and deny Defendants' Motion to Compel [D.E. 48].

WHEREFORE, the Plaintiff/Counter-Defendant, AIG CENTENNIAL INSURANCE COMPANY, respectfully requests this Honorable Court sustain each and every objection set forth by Plaintiff/Counter-Defendant in its Responses and Amended and Supplemental Responses to Defendants' Request for Production and enter an order denying Defendants' Motion to Compel Production of Documents and for such other and further relief as this Honorable Court deems just and appropriate under the circumstances.

Respectfully submitted,


_____*/s/ Charles S. Davant*_____
ANDREW W. ANDERSON, ESQ.
Florida Bar No.: 213144
Anderson@houckanderson.com
LAWRENCE JACOBSON, ESQ.
Florida Bar No.: 0846201
ljacobson@houckanderson.com
CHARLES S. DAVANT
Florida Bar No.: 15178
cdavant@houckanderson.com
HOUCK ANDERSON P.A.
Attorneys for Plaintiff
1500 Cordova Road., Suite 300
Ft. Lauderdale, Florida 33316
Telephone:  (305) 372-9044
Facsimile:   (954) 463-8752

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*Charles S. Davant*
CHARLES S. DAVANT, ESQ.


## SERVICE LIST

**Attorneys for Bank of America, N.A.**

J. RANDOLPH LIEBLER, ESQUIRE
CHRISTOPHER M. DRURY, ESQUIRE
Liebler, Gonzalez & Portuondo, P.A.
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, Florida  33130
Telephone:  305-379-0400
Telefax:  305-379-9626
Email:  jrl@lgplaw.com
        cmd@lpglaw.com

**Attorneys for J. Brian O'Neill**
Meghan C. Moore, Esq.
Jeffrey L. Greyber, Esq.
Ver Ploeg & Lumpkin, P.A.
100 SE 2nd Street, 30th Floor
Miami, Florida 33131
Telephone:  305-577-3996
Telefax:  305-577-3550
Email: mmoore@vpl-law.com
        jgreyber@vpl-law.com

HOUCK ANDERSON, ATTORNEYS AT LAW

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 09-60551- CIV - ZLOCH

AIG CENTENNIAL INSURANCE
COMPANY,

      Plaintiff,

vs.

J. BRIAN O'NEILL, CAROLINA ACQUISITION
LLC, and BANK OF AMERICA N.A.

_____Defendants._____/

## PLAINTIFF/COUNTER-DEFENDANT AIG CENTENNIAL INSURANCE COMPANY'S FIRST AMENDED PRIVILEGE LOG

COMES NOW, the Defendant, AIG CENTENNIAL INSURANCE COMPANY

("CENTENNIAL") by and through the undersigned counsel and pursuant to Federal Rule of

Civil Procedure 26 files this, its Privilege Log and states as follows:

### First Amended Privilege Log

1. Underwriting file (*Bates Stamp Nos. 192 – 242*).

2. January 27, 2009 correspondence from Andrew W. Anderson at Houck Anderson to Matt Roethke at Centennial regarding the policy of insurance that is the subject of this litigation (*Bates Stamp Nos. 243 – 263*).

3. December 23, 2008 internal Centennial correspondence from Matt Rotheke to Paul Cuzzola regarding the policy of insurance that is the subject of this litigation (*Bates Stamp No. 268*).

4. December 23, 2008 correspondence from Matt Roetheke at Centennial to Andrew W. Anderson at Houck Anderson regarding policy of insurance that is the subject of this litigation (*Bates Stamp No. 269*).

5. December 23, 2008 internal Centennial correspondence from Paul Cuzzola to Matt Roethke and Sean Blue regarding policy of insurance that is the subject of this litigation (*Bates Stamp No. 270-271*).

6. December 23, 2008 internal Centennial correspondence to and from Matt Roethke and Peter Piotrowski regarding policy of insurance that is the subject of this litigation (*Bates Stamp No. 272-273*).

7. December 22, 2008 internal Centennial correspondence from Matt Roethke to Paul Cuzzola regarding *Breymere* (*Bates Stamp No. 276-277*).

8. February 27, 2008 correspondence from Matt Roethke at Centennial to Mark Houck Houck Anderson regarding policy of insurance that is the subject of this litigation (*Bates Stamp No. 418*).

9. February 27, 2008 documents regarding communication from Matt Roethke at Centennial to Mark Houck at Houck Anderson (*Bates Stamp No. 419-420*).

10. February 27, 2008 document regarding communication from Matt Roethke at Centennial to Mark Houck at Houck Anderson (*Bates Stamp No. 421*).

11. February 27, 2008 document regarding contact information for Mark Houck of Houck Anderson (*Bates Stamp No. 422*).

12. February 27, 2008 correspondence regarding correspondence from Matt Rotheke at Centennial to Mark Houck at  Houck Anderson with discussion of policy of insurance that is the subject of this litigation (*Bates Stamp No. 438*).

13. Document containing contents of internal Centennial correspondence from Matt Roethke at Centennial to Paul Cuzzola at Centennial regarding the policy of insurance that is the subject of this litigation identified as Bates Stamp No. 268 above (*Bates Stamp No. 449*).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing was furnished by telefax and mail on the 19th day of April, 2010 to Jeffrey L. Greyber, Esquire, VerPloeg & Lumpkin, P.A., Attorneys for J. Brian O'Neill and Carolina Acquisition LLC; and J. Randolph

2

Liebler, Esquire, Christopher M. Drury, Esquire, Liebler, Gonzalez & Portunodo, P.A., Attorneys

for Bank of America N.A., 44 West Flagler Street, 25th Floor, Miami, Florida 33130.

Respectfully submitted,

ANDREW W. ANDERSON, ESQ.
Florida Bar No.: 213144
LAWRENCE JACOBSON, ESQ.
Florida Bar No. 0846201
CHARLES S. DAVANT, ESQ.
Florida Bar No. 15178
HOUCK ANDERSON P.A.
1500 Cordova Road, Suite 300
Ft. Lauderdale, Florida  33316
Attorneys for Plaintiff
Telephone: (305) 372-9044
Facsimile:   (954) 463-8752
Email:   aanderson@houckanderson.com
            ljacobson@houckanderson.com
            cdavant@houckanderson.com

# EXHIBIT "B"



**AIG Private Client Group**

A Member of American International Group, Inc.

July 25, 2007

*VIA E-Mail: mkbrown@bsnlawyer.com*
Mark Kay Brown
c/o J. Brian O'Neill
2701 Renaissance Blvd., 4th Floor
King of Prussia, PA 19406

Re: 2005 66' Legacy
Date of Loss: 7/27/07
Claim number: 90009
Policy number: PY 758-66-66
Company: AIG centennial Insurance Company

Dear Ms. Brown:

It was a pleasure to speak to you on Friday July 27th 2007 regarding the unfortunate circumstances surrounding the damage to your client's yacht, a 2005 66' Legacy, M/Y BRYEMERE. This correspondence will formally acknowledge receipt of the claim in regards to the captioned policy. At this time, AIG Private Client Group on behalf of AIG Centennial Insurance Company reserves all of it's rights under the terms and conditions of the referenced policy. I am the individual responsible for handling this claim and will be your point of contact going forward.

I recommend that you and/or the owner provide the necessary authorization for both Tony Knowles and Bruce Pfund to correspondence and report on the extent of and likely cause of damage directly to me. Once we have a better understanding on the cause of the damage, we will be in a better position to respond on coverage.

Please contact me with any questions and/or comments. I can be reached directly at 908-679-2689, toll free at 888-760-9195 or e-mail at Matthew.Roethke@aig.com.

Sincerely,
Matt Roethke
Yacht Claims Specialist
AIG Private Client Group on behalf of
AIG Centennial Insurance Company
Direct 908-679-2689
Fax 877-325-0548
Toll Free 888-760-9195

CC: Willis of Pennsylvania, Inc., attention Sharon Kimble via fax: 1-610-254-5600

AIG Private Client Group, 100 Connell Dr., Suite 2100, Berkeley Heights, NJ 07922
Direct 908-679-2689 / Toll Free 888-760-9195 / Fax 877-325-0548 / Mobile 917-363-8247
Matthew.Roethke@aig.com

127

# EXHIBIT "C"

**AIG** **AIG Private Client Group**

A Member of American International Group, Inc.

October 30, 2007

*VIA E-Mail: mkbrown@bsnlawyer.com*
Mark Kay Brown
c/o J. Brian O'Neill
2701 Renaissance Blvd., 4th Floor
King of Prussia, PA 19406

Re: 2005 66' Legacy
Date of Loss: 7/27/07
Claim number: 90009
Policy number: PY 758-66-66
Company: AIG centennial Insurance Company

### WITHOUT PREJUDICE OR ADMISSION OF LIABILITY

Dear Ms. Brown:

In regards to the captioned matter regarding BRYEMERE, I have received and reviewed the engineering report from Gram Schweikert & Dave Pedrick of Pedrick Yacht Designs. The inspection took place on September 6th 2007 with a sea trial the following day on Narragansett Bay. In short, the following was determined on the current status of BRYEMERE:

1. The yacht as constructed does not meet structural standards, and this insufficiency is the reason for the observed damage.
2. The design of the yacht does not meet American Bureau of Shipping (ABS) standards as was listed on the design drawings, but does appear to meet the standards of Det Norske Veritas (DNV) which is another commonly used standard in vessels of this type.
3. The damage and structural deficiency is primarily limited to the forward hull regions.
4. By repairing the yacht with two outboard longitudinal instead of the single outboard longitudinal as designed, the yacht will be able to meet ABS standards, and the repair can presumably avoid the engine room and salon areas.
5. The repair which has been recommended and agreed to by both Tony Knowles, Dave Pedrick, Gram Schweikert and David Jones, would provide confidence that the structure of the yacht is sufficient to withstand her intended service.

I have attached a copy of the report for your review and perusal. After your review and consultation with the owner, please contact me with any questions and/comments. I can be reached directly at 908-679-2689, toll free at 888-760-9195 or e-mail at Matthew.Roethke@aig.com.

Sincerely,
Matt Roethke
Yacht Claims Specialist
AIG Private Client Group on behalf of
AIG Centennial Insurance Company
Direct 908-679-2689
Fax 877-325-0548
Toll Free 888-760-9195

Attachment – 12 pages
CC: Willis of Pennsylvania, Inc., attention Sharon King, Sharon.king@willis.com w/attachment

AIG Private Client Group, 100 Connell Dr., Suite 2100, Berkeley Heights, NJ 07922
Direct 908-679-2689 / Toll Free 888-760-9195 / Fax 877-325-0548 / Mobile 917-363-8247
Matthew.Roethke@aig.com

98

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____

CAROLINA ACQUISITION, LLC., as Owner
of a 2005 Twin Screw 66 ½ Foot Fiberglass
M/Y "BRYEMERE"

        Plaintiff,

vs.

DOUBLE BILLED, LLC., PRICE MARINE
SERVICES, INC., HMY YACHT SALES, INC.,
THOMAS PRICE, JIM BARBONI,
RICHARD C. TALBERT, JR.,

        Defendants.
_____/



**07-61738**

**CIV-MARRA**

**MAGISTRATE JUDGE JOHNSON**

FILED by _____ D.C.
INTAKE

NOV 29 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

### NOTICE OF REMOVAL

    COMES NOW Defendant, DOUBLE BILLED, LLC (hereinafter "DOUBLE BILLED") by and through undersigned counsel and pursuant to 28 U.S.C. sections 1332, 1441 and 1446, hereby files this Notice of Removal to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, where the action is currently pending, and states that:

    1.    According to the records of the Broward County Clerk of Court, on or about October 29, 2007, the Plaintiff, Carolina Acquisitions, LLC., (hereinafter "Plaintiff") filed a lawsuit in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida entitled, "CAROLINA ACQUISITION, LLC., as Owner of a 2005 Twin Screw 66 ½ Foot Fiberglass Motor Yacht "BRYEMERE" v. DOUBLE BILLED, LLC.,

PRICE MARINE SERVICES, INC., HMY YACHT SALES, INC., THOMAS PRICE, JIM BARBONI, RICHARD C. TALBERT, JR.," Case Number CACE07028684(13).

2.     The Plaintiff, Carolina Acquisition, LLC., is a limited liability company incorporated in the state of Rhode Island.  Based upon information and belief, Carolina Acquisition, LLC., maintains its principal place of business in the state of Rhode Island. The sole member of Carolina Acquisition, LLC., is Brian O'Neill.   [Compl. at ¶ 17]. Based upon information and belief Brian O'Neill is a citizen of the state of Pennsylvania. "A limited liability company is a citizen of any state of which a member of the company is a citizen."  Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004).

3.     Defendant, DOUBLE BILLED, LLC., is a limited liability company incorporated in the state of Delaware which is also the LLC's principal place of business.  DOUBLE BILLED has two members: Richard C. Talbert, Jr. and Jack Medlin. Talbert  is a citizen of the state of South Carolina.  Medlin is a citizen of the state of North Carolina.

4.     Defendant, PRICE MARINE SERVICES, INC., is a corporation incorporated in the state of Florida which maintains its principal place of business in the state of Florida.  PRICE MARINE SERVICES, INC. is a citizen of the state of Florida.

5.     Defendant, HMY YACHT SALES, INC., is a corporation incorporated in the state of Florida which maintains its principal place of business in the state of Florida. HMY YACHT SALES, INC., is a citizen of the state of Florida.

6.     Defendant, THOMAS PRICE, based upon information and belief is a citizen of the state of Florida.

7.     Defendant, JIM BARBONI, based upon information and belief is a citizen of the state of Florida.

8.     Defendant, RICHARD C. TALBERT, JR., is a citizen of the state of South Carolina.

9.     Plaintiff alleges damages in excess of $75,000.00 stemming from transaction involving two (2) vessels with a total purchase price of $2,275,000.00. [Compl. at ¶ 54, 63, 69, 75, 81, 92].

10.    Section 1332 provides that where a complaint is founded on diversity of citizenship, a federal court may maintain jurisdiction over the action "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between (1) citizens of different States." 28 U.S.C. 1332 (2006).

11.    Given the foregoing there is complete diversity of citizenship pursuant to 28 U.S.C. section 1332, therefore, this case is removable pursuant to 28 U.S.C. sections 1441 and 1446.

12.    This lawsuit was served upon Defendant DOUBLE BILLED on or about November 15, 2007.

13.    This lawsuit was served upon Defendant TALBERT on or about November 23, 2007. Defendant TALBERT consents to removal of this case to Federal Court.

14.    This Notice of Removal is "filed within the thirty days after receipt by the defendant," as required by 28 U.S.C. section 1446(b), and it is therefore timely.

15.    Pursuant to 28 U.S.C. 1446(a) a true and correct copy of all process, pleadings, and orders served upon DOUBLE BILLED is attached hereto as Defendant's Composite Exhibit "1".

16.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to the Purchase and Sale Agreement, attached to Plaintiff's Complaint as Exhibit "A" which is part of Defendant's Composite Exhibit "1" to this Notice of Removal which provides that venue lies in Broward County, Florida.

17.     The movant has examined the Circuit Court docket and there is no evidence in the record for the 17th Judicial Circuit in and for Broward County, Florida as of November 29, 2007, that service has been made on any co-defendants other than TALBERT in this action.   Defendant TALBERT consents to removal of this case to Federal Court.   As such, Defendant has not conferred with the remaining co-defendants as consent to removal from non-served named defendants is not necessary for removal. Robert White v. Bombardier Corporation, et al., 313 F.Supp.2d 1295, 1300 (N.D. Fla. 2004).

18.     Pursuant to 28 U.S.C. section 1446(d), Defendant is serving written notice of the Notice of Removal to all served adverse parties and the Clerk of the State Court.

[CONTINUES ON NEXT PAGE]

WHEREFORE, Defendant prays that this Notice of Removal will be deemed good and sufficient, and that proceedings attached hereto be removed from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida to this Honorable Court's docket.

Respectfully submitted,

By:

ANDREW N. MESCOLOTTO (28141)
andrew.mescolotto@fertig.com

CHRISTOPHER R. FERTIG (218421)
chris.fertig@fertig.com

FERTIG AND GRAMLING
200 Southeast 13th Street
Fort Lauderdale, FL 33316
PH:    (954) 763-5020
FX:    (954) 763-5412
Attorneys for Defendant
Double Billed, LLC. &
Richard C. Talbert, Jr.

# EXHIBIT "E"



Telephone 610-964-8700
Fax 610-254-5600
www.willis.com

March 21, 2008

J. Brian and Miriam O'Neill
Attn: Desiree Foulds
2701 Renaissance Blvd, 4th fl
King of Prussia, PA 19406

Re: PY 758-66-66 Bryemere

Dear Mr. and Mrs. O'Neill

We have been advised that there is planning being carried for making repairs on
BRYEMERE. It is AIG's position that BRYEMERE was not built as designed and
intended and as such, falls under the Manufacturing and Design Defects exclusion of
the policy. Since repairs to BRYEMERE have not started and no formal claim has been
presented to AIG, we believe it is the best interest of all parties to have this issue
resolved now rather than later. As such, AIG Private Client Group believes that there is
no coverage for this matter and any claim which the Insured may contemplate
submitting to underwriters as a claim should be re-considered.

As you know, Tony Knowles was the initial surveyor who looked at BRYEMERE. Tony
was of the opinion that BRYEMERE was not built as intended and/or designed, cannot
be repaired and is un-seaworthy. Before Tony issued his formal position, Tony though it
prudent to enlist the advice of a naval architect. Naval architect Matt Smith also
concluded that the BRYEMERE was "not built as designed." In further support of Tony
Knowles and Matt Smith's position, a review of the BRYEMERE and her build plans
was conducted by Dave Pedrick and Gram Schweikert of Pedrick Yacht Designs, Inc.
Both of these individuals concluded that the yacht "as constructed does not meet
structural standards and this insufficiency is the reason for the observed damage." AIG
went to considerable lengths and costs to ensure that the position that has been
formulated is factually correct and supported by redundancy. Mary Kay Brown was
provided with copies of all these reports.

Because of all the above information, AIG would like to see the claim withdrawn. I
understand you are out of the town until the end of the month. AIG is available to
conference with you and/or whoever else in order to bring some resolution to this
matter.