UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 09-60551- CIV - ZLOCH

AIG CENTENNIAL INSURANCE
COMPANY,

    Plaintiff,

vs.

J. BRIAN O'NEILL, CAROLINA ACQUISITION
LLC, and BANK OF AMERICA N.A.,

    Defendants.
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS J. BRIAN O'NEILL AND CAROLINA ACQUISITION LLC'S. RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND/OR LIMIT REPORT, REBUTTAL REPORT, AFFIDAVIT AND TESTIMONY OF DEFENSE EXPERT DAVID PEDRICK**

    COMES NOW THE Plaintiff, AIG CENTENNIAL INSURANCE COMPANY ("CENTENNIAL"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and files its Reply in Support of its Motion to Strike and/or Limit Report, Rebuttal Report, Affidavit[1] and Testimony of Defense Expert David Pedrick ("Pedrick") [DE 140] and in support thereof states as follows:

    In the introduction to its Response to Plaintiff's Motion ("Response") Defendants refer to the Court's decision denying Plaintiff's Motion to Amend its Answers and Affirmative Defenses [DE 139]. Defendants neglected, however, to refer to the Court's concluding remarks on pages 6-7 of its Order (emphasis supplied): "However, as the Court has denied the Plaintiff's Motions to Amend, in ruling on the pending summary judgment motions the Court *will only consider the claims contained in the operative pleadings before it and any argument reasonably drawn*

---

[1] Defendants submitted Mr. Pedrick's January 24, 2011 affidavit [DE-176-1] with their Response in Opposition; *i.e.* after filing of Plaintiff's Motion to Strike.

*therefrom*." Although not specifically stated in the Order, the inference is that the Court's rational applies to any other pending motions, including the current motion.

In their Answer, Affirmative Defenses and Counterclaim to Plaintiff's First Amended Complaint, [DE 35] Defendants assert as their Second Affirmative Defense the following (emphasis supplied):

> **Evidence from O'NEILL'S other Florida action is not binding**.
>
> As his Second Affirmative Defense, O'NEILL states that the pleadings, testimony and papers from O'NEILL'S other Florida litigation, which are liberally referenced in the Complaint, do not constitute binding admissions supportive of *judicial or collateral estoppel* in this case, are irrelevant and do not support the relief AIG seeks."

Manifestly, the Defendants have acknowledged the Amended Complaint and raised the issue of judicial and/or collateral estoppel in their operative pleadings in this litigation. A party is bound by the issues raised in its pleadings. *Cooper v. Meridian Yachts Ltd*., 575 F.3d 1151, 1177 (C.A. 11(Fla.), 2009). As Defendants conceded by affirmatively asserting that the "pleadings, testimony and papers" from the HMY litigation were not supportive of judicial or collateral estoppel in the current declaratory action, Defendants recognized that it is Plaintiff's position that, in fact, Defendants are indeed bound by such testimony, *etc*.

I.   The Doctrines of Judicial and/or Collateral Estoppel Bar Defendants' Admission of Mr. Pedrick's Contradictory Testimony in this Action

Defendants correctly cite to the U.S. Supreme Court's decision in *New Hampshire v. Maine,* 532 US 742 (2001) as a source for the elements of judicial estoppel. The second criterion is "whether the parties succeeded in persuading the tribunal to accept the earlier position so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either Court was mislead. Plaintiff respectfully submits that Defendants' current position, as advocated by Mr. Pedrick, if accepted by the Court, presents that precise dilemma.

Defendants expend a great deal of energy in pages 3-8 of their Response in endeavoring to harmonize Mr. Pedrick's testimony in the HMY litigation and their current action seeking insurance coverage. The thrust of their argument is that while Mr. Pedrick did confirm that there were numerous structural deficiencies extant in *BRYEMERE* before and at the time of CAROLINA'S purchase (HMY litigation) the effects of these (now) latent conditions on the yacht only manifested themselves several days into the vessel's first voyage under

CAROLINA'S ownership (current litigation). But that was not Mr. Pedrick's testimony in the HMY trial, when he explained that the reasons for his opinion that the vessel was unseaworthy prior to April 2007 included flexing, which caused cracks in the fiberglass and "the foundations, the forward foundations on these tanks had broken on both sides of the boat. So these were things that happen over a long period of time. They weren't just in the relatively few running hours that happened after April 2007." [HMY trial testimony D. Pedrick ("HMY Pedrick") 04/14/2010 p. 47 LL 3-8]. Mr. Pedrick was unequivocal in his testimony in the HMY trial that the delamination of the vessel hull topside core laminate occurred prior to April 2007:

> Q.  And the condition [delamination] that you have described and we see on this photograph as with the other defects and deficiencies in the structure of the boat, is this also something that had taken place prior to April 2007 when CAROLINA ACQUISITION bought the boat?
>
> A.  Yes. [HMY Pedrick 04/15/2010 p. 36 LL 16-21].

In footnote 2 of their Response Defendants accuse Plaintiff of "purposely confabulat[ing] defect with resulting damage." However, it is quite clear from Mr. Pedrick's HMY testimony that he was most anxious to persuade the jury that both the defects and resulting damage existed *prior* to CAROLINA'S purchase:

> Q.  Assume that the boat had not been pulled out of water and that the boat was actually being used going out 100 miles off shore. Do you have an opinion as to what would have happened with the "Double Billed"?
>
> A.  Well, this boat was in a state of deterioration that was pretty well advanced. And the greatest risk that I see in it is the bottom panel, that is the watertight barrier between thee and the deep blue sea, is in the process of breaking. The cracks on the outside. There where was the breaking away of this partial longitudinal girder on the inside. There were things moving around the girder and the tanks were moving around. There was a lot of force and flexion going on in that area. [HMY Pedrick 04/15/10, p. 38 L 19 - p. 39 L 6]

Mr. Pedrick was the only naval architect presented by CAROLINA in the HMY litigation. Clearly his testimony had a persuasive effect on the jury, as they awarded CAROLINA two million dollars in *damages* resulting from the unseaworthy conditions existing in *BRYEMERE* at or before the time of CAROLINA'S purchase of the vessel. The HMY verdict is confirmation that the damages had manifested themselves prior to the inception of CENTENNIAL'S policy. Pedrick's current testimony that the numerous structural deficiencies

that he, as well as other experts observed in *BRYEMERE'S* construction are now winnowed to merely three, and of these, the most significant, the fuel tank brackets, only broke suddenly, when the vessel was outside Ocean City, Maryland in July 2007, flies in the face of the jury verdict and Pedrick's own testimony. Mr. Pedrick's testimony in the two trials is irreconcilable and its acceptance in this litigation would brand the HMY jury's award of two million dollars as a clear "mockery of justice". *United Kingdom v. U.S.* 238 F.3d 1312, 1324 (C.A.11 (Fla.),2001) ('Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.')

During his December 8, 2010 deposition, Mr. Pedrick, for the first time, offered the opinion that the delamination of the hull observed by the crew was inextricably linked, both in terms of causation and timing, to the failure of the fuel tank brackets. Prior to his December 8, 2010 deposition, Mr. Pedrick never offered any opinion that related the delamination of the hull topsides, either causally or temporally, to the failure of the fuel tank brackets. In his November 19, 2008 HMY Affidavit, paragraph 8(f), Pedrick makes no mention whatsoever of any relationship of the delamination to the failure of the tank brackets but rather opines the "topside core was significantly thinner than designed, leading to, if not causing, delamination of the skin in the accommodation area." (*Carolina Acquisition v. HMY Yachts Sales, et al*, Case No. 07-61738, DE 140-10, ¶ 8(f)). In his March 16, 2010 HMY deposition, Pedrick also attributes the delamination to the fact the core was significantly less (*i.e.* thinner) than called for in the Blount plans. Notably, nowhere during his HMY testimony does Pedrick associate the delamination of the topsides either causally or temporally with the fuel tank bracket failure.

In his June 8, 2010 deposition in this case, Pedrick again, consistent with all his prior testimony, testified the delamination occurred because the core as built was thinner than the core as specified and resulted in a substantially weaker structure. No mention was made or any temporal or causal relationship to the failure of the fuel tank brackets. (Pedrick June 8, 2010 deposition testimony; p. 70 L 6 –p. 71 L13; **Exhibit** "**A**"). Moreover, when specifically asked whether the delamination occurred over a period of time versus suddenly, Pedrick responded: "it was over some period of time rather than instantaneous". *Id.* In his June 18, 2010 report on this case, on page 7, Pedrick opined, twice, "The weakness of the thin panel caused shear failure within the core, and caused the bond between the inside skin and the core to fail in several

areas." Again, no mention was made whatsoever, as to a temporal or causal relationship between the delamination of the hull topsides and the failure of the fuel tank brackets.

Clearly, the consistent opinions set forth in (1) Pedrick's Affidavit from the HMY litigation, (2) deposition from the HMY litigation, (3) the June 8, 2010 deposition from the instant litigation, his June 18, 2010 Report and (4) the HMY Trial, on the one hand, and the wholly different opinion set forth in Pedrick's December 8, 2010 deposition, on the other hand, are entirely inconsistent and unexplained. The only explanation offered by Mr. Pedrick was that the "violent movement" of the fuel tanks was observed just before the excessive flexing of the hull topsides was observed.

Once the factual basis of his opinions as to when the fuel tank brackets failed was proven to the wholly wrong, Pedrick nevertheless clung to his opinion and, long after the deadline for such disclosures, offered entirely new facts and opinions as to why and when the excessive flexing in the hull was observed when it was. The simple fact is that the data on which Pedrick now claims to rely as the basis of his opinion, the course and speed of the yacht, the weather data as to the fore and direction of wind and waves, was always available to Pedrick, as was the depositions of the vessel's crew members, which he admits he never read until after his deposition. For Defendants to argue that Pedrick is now permitted to change his opinions and offer these additional facts as a basis for these revised opinions because counsel for Plaintiff did not fully inquire into the entire basis for his opinions is not only a distortion of the truth, but a distortion of the law.

On pages 8-10 of their Response Defendants accuse Plaintiff of mischaracterizing Pedrick's trial testimony concerning *BRYEMERE'S* overall state of deterioration when purchased in April 2007. In particular, CAROLINA and O'NEILL now maintain that Mr. Pedrick's testimony that *BRYEMERE'S* deterioration was "pretty well advanced" referred to the time of his examination in September 2007 and not as of April 19, when CAROLINA purchased the yacht.

However, this interpretation simply is not borne out by the trial testimony. Thus, on the second day of his testimony, under direct examination by CAROLINA'S attorney, Mr. Pedrick explained the manner in which the forward fuel tanks were secured to the vessel's framing by a combination of bolting and welding of aluminum brackets [see HMY Pedrick 04/15/2010 p 27 L 6 – p 31 L 9]. In particular, Mr. Pedrick pointed to a photograph and testified:

> And you can see from the bolts, especially this last one, that it worked its way out, they stripped their threads that they were fastened into.  Plus the weld along there is fractured." [*Id.*, p. 28 LL 15-19]

When asked whether they had an opinion as to whether the condition he just described existed before April 2007, when CAROLINA bought the yacht, he replied "yes" [*Id.*, p. 29 L 17]. Mr. Pedrick then explained that the condition described "had been going on for a significant length of time and that would have included prior to the sale" [*Id.*, p. 31 LL 8-9]. He based this conclusion, in part, on evidence that "this was something that had been going on and had been - there was an attempt to have dealt with in a prior and ownership (*sic*.)" [*Id.*, p. 29 LL 23-25]. The statement was consistent with Mr. Pedrick's earlier testimony that the vessel was not seaworthy prior to April 2007 [HMY Pedrick 04/14/10 p. 46 L 17] and that the problems did not occur during the relatively few running hours that occurred after April 2007 [*Id.*, p. 47 LL 7-8].

In footnote 3 Defendants state that to suggest that Mr. Pedrick's testimony refers to the vessel's condition prior to purchase is to imply that O'NEILL voluntarily spent over two million dollars while noticing substantial flexing in the hull bottom. Firstly, that assumption is inaccurate, as the vessel's state of deterioration at the time of purchase does not depend upon O'NEILL'S observations.  More to the point, if Defendants' characterization of Mr. Pedrick's testimony at the HMY trial is accurate, then it is unlikely that the jury would have awarded CAROLINA two million dollars.  The entire thrust of the count of negligent misrepresentation against the seller and the yacht broker is that they "should have known *prior to selling the vessel to Plaintiff*" that their representations and assurances regarding the vessel were false, and that the vessel was not seaworthy, unsafe and structurally unsound and not built according to the design or plans." [HMY litigation First Amended Complaint DE 174-1 ¶113; 126 (emphasis supplied)]. CAROLINA brought its lawsuit against the sellers and brokers and successfully proved that *BRYEMERE* was in a serious state of deterioration, unseaworthy and dangerous, at the time of CAROLINA'S purchase, based in a very large part on the testimony of Mr. Pedrick.  The vessel's condition after purchase was not of concern to the HMY jury. To now maintain otherwise is an affront to this Honorable Court.

II      Mr. Pedrick's Opinions do not Survive Examination under *Daubert*.

On pages 11-13 of their Response Defendants seek to rehabilitate Mr. Pedrick's December 8, 2010 deposition testimony by a combination of editorial gloss and a re-write via a

January 7, 2011 *errata* sheet. Defendants are concerned primarily with Mr. Pedrick's revelation during his deposition that he premised his conclusion that the forward fuel tank bracket broke "suddenly" somewhere Ocean City, Maryland on his subjective impression of L.J. Gallagher's "emotional seriousness" or "emotional intensity" when relying the information. To counter this clear, unequivocal testimony Mr. Pedrick has issued an *errata* sheet, which Defendants characterize as a "correction" of his testimony. Mr. Pedrick now belatedly states that he has subsequently reviewed the deposition testimony of the delivery crew and spoken to his client, L.J. Gallagher, and declares that the level of alarm he was referring to actually concerned the observation of bottom flexing in September 2007. Clearly, this new position is in direct contravention of Mr. Pedrick's unequivocal deposition testimony and completely suspect.[2]

If Mr. Pedrick's "correction" as recounted in his *errata* sheet is accepted, then his deposition testimony leaves him with no basis at all for his conclusion regarding the timing of the failure of the forward fuel tank bracket. In an effort to cover this gaping hole Defendants submit with their motion as Exhibit "1" Mr. Pedrick's December 4, 2010 "Memorandum of Documentation used in Forming Expert Opinions". However, this document purports to be a summary of the data relied on by Mr. Pedrick in the formulation of *all* his opinions, none of which is specified. It does not state his individual, significant opinions and the documentation upon which they are based. Most importantly for this discussion, it does not state that factual basis for his opinion that the fuel tank bracket broke outside of Ocean City, Maryland in July, 2007.

Moreover, Mr. Pedrick's testimony regarding the emotional intensity of Mr. Gallagher as the basis for his opinion was in response to a clear and direct questioning:

> Q.   *What* do you base your opinion on that the catastrophic failure occurred right before the movement of the tank was noticed?
>
> [Objections]
>
> Q.   Explain to me the *facts* on which that opinion is based. [Pedrick Tr. P. 198 L 20 – P. 199 L 2 (emphasis supplied)].

The questions could not have been clearer; the response was direct and the Defendants' attempt at editorial in footnote 5 is simply not credible. The purported laundry list of facts as

---

[2] Plaintiff will be moving to the Court to strike Mr. Pedrick's *errata* sheet in a separate motion.

supporting Mr. Pedrick's conclusion found on pages 12-13 of Defendants' Response is merely a generic recapitulation of the evidence in the case; not a specific, factual foundation for Mr. Pedrick's very precise conclusion as to the timing of the failure of the fuel tank bracket.

The record clearly demonstrates that Mr. Pedrick was repeatedly asked to provide ALL the facts upon which he was relying. Moreover, it is not the duty of opposing counsel to extract, fat by fact, the basis of an expert's opinions, it is the duty of the expert to fully disclose them in his report and, if there is a failure to do so sanctions are entirely appropriate. Fed. R. Civ. P. 26(a)(2)(B)(i); Fed. R. Civ. P. 37(a)(3)(A). Pedrick's Expert Report violates Rule 26(a)(2)(B)(i) because he failed to provide the entire substantive rationale in detail with respect to the basis and reasons for his proffered opinions, which he now belatedly claims as the basis of his revised opinions. "[An expert] report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 735 (7th Cir. 1998). Any suggestion that an objecting party is obligated to depose the offering party's expert in order to clear up ambiguities in his report ignores the purposes for which Rule 26(a)(2)(B) exists-to avoid trial-by-surprise and to avoid wasting unnecessary resources. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F.Supp. 2d 905, 913 (N.D. Ohio 2008). "Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion." *Reed v. Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996).

Defendants' suggestion at pages 11-12 that it was the responsibility of Plaintiff's counsel to fully inquire into all the facts upon which was Mr. Pedrick was relying is ludicrous. "If either party must bear the burden of the unexplained deficiency it must be the party in default . . . . He may not shift that burden to his opponent." *Majewski v. Southland Corp.*, 170 F.R.D. 25, 27 (D. Kan. 1996).

This Court, as "gate keeper" must insure that admissible expert opinion is premised upon a "methodology that is sufficiently reliable based on the application of scientific technical or specialized expertise." *Powell v. Carrie Int'l* 2007 U.S. Dist. Lexis 26074(SD Fla. 2007) (citing *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548 (11th Cir. 1998). Mr. Pedrick's conclusion that the fuel bracket suddenly failed during the vessel's voyage near Ocean City, Maryland is diametrically opposed to his earlier testimony and rests on a purely subjective, unscientific premise and should be excluded.

III      Pedrick's Opinions Lack Scientific Foundation.

Defendants devote the balance of their Response, pages 13- 19, in an effort to find a scientific basis to bolster Mr. Pedrick's decidedly unscientific foundation for his conclusion that the forward fuel tank bracket broke suddenly while the vessel was outside Ocean City, Maryland. On pages 13-14 Defendants cite to a variety of cases standing for the general proposition that under Fed. R. Evid. 702 and *Daubert* the District Court, in evaluating the admissibility of expert testimony, is not to focus on the credibility of expert opinion. While that proposition is true as far as it goes, Defendants cannot escape the burden they have, as the proponent of Mr. Pedrick's testimony, to establish that the proposed opinion rests on scientific objective ground. As explained by the Eleventh Circuit in *McDowell v. Brown* 392 F.3d 1283, 1298 (C.A.11 (Ga.), 2004) (emphasis supplied):

> *Daubert* put forth a two-pronged analysis, used to determine the admissibility of the proffered expert testimony on scientific issues under Rule 702. First, the expert testimony must be reliable, so that it must be "scientific," *meaning grounded in the methods and procedures of science*, and must constitute "knowledge," meaning something more than subjective belief or unsupported assumptions. *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786.

Clearly, the emotional intensity with which L.J. Gallagher explained the vessel's movement during the voyage from Palm Beach, Florida to Newport, Rhode Island, is insufficient grounding "in the methods and procedures of science"; nor does it constitute "knowledge". It is merely a subjective conclusion, based on more subjective evidence. Defendants' repeated assertion in footnote 7 that Mr. Pedrick has "clarified" his testimony "by *errata*" is unacceptable. Contrary to Defendants' assertion, his post-deposition reversal is not "fodder for cross-examination" as the issue is the lack of scientific foundation – not credibility. As stated by the U.S. Supreme Court in *General Elec. Co. v. Joiner* 522 U.S. 136, 146, 118 S.Ct. 512, 519 (U.S.1997) (emphasis supplied):

> But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is *simply too great an analytical gap between the data and the opinion proffered.*

Mr. Pedrick was asked during his deposition to state the factual basis upon which his opinion rested and he answered clearly and unequivocally. Defendants would have Mr. Pedrick clarify, explain and correct until he gets it right, right up to the eve of trial, but that is not

permitted under Rule 26. As noted by the commentators in 10 *Federal Procedure, Lawyer's Edition* §26:64 (West, 2010) Supplementation of disclosures—Expert reports [while a party has a duty to supplement its expert witness's disclosure]:

> [T]he rule does not grant a license to supplement a previously filed expert report simply because a party wants to, or because a party's expert did an inadequate or incomplete preparation, but only when the information a party has disclosed is incomplete or incorrect. *Supplementary disclosures are not intended to provide an extension of the expert designation and report production deadline.* (internal citations omitted) (emphasis supplied).

Plaintiff accepts the general proposition quoted from the decision of the Eastern District of Louisiana in *Voth v. State Farm Fire and Cas. Inc., Co.*, 2009 WL 411459, (E.D. La., 2009) cited in footnote 8 of Defendants' Response that: "neither Rule 702 of the Federal Rules of Evidence nor *Daubert* require specific actions to be taken to validate the investigation done by an expert witness." What Defendants neglect to mention is that in *Voth* the Court allowed the Plaintiff's expert's testimony because he explained in detail the scientific methodology that he used. The insurance company's objection, overruled by the Court, was that the expert allegedly relied on "bad facts". This criticism is a world apart from Plaintiff's criticism of Mr. Pedrick's opinion, which is that it relies on nothing more substantial than subjective impression; the emotional intensity of Mr. Gallagher's recount of the voyage incident.

On Page 15 Defendants aver: "At trial, Pedrick will set forth scientific principals and methods of study he employed to formulate his opinions." Under Fed. R. Civ. P. 26 Defendants were required long ago to submit a report setting forth the scientific basis and methods underlying the opinions of Mr. Pedrick and present him for deposition after the preparation of his report. To do so at trial is simply too late. The purpose of the Rule is to permit CENTENNIAL the opportunity to cross-examine Mr. Pedrick on his opinions and the basis on which they rest before trial. Mr. Pedrick was asked clearly during his December 8, 2010 deposition to state the entire factual basis for his opinion that the forward fuel tank bracket broke suddenly and catastrophically while the vessel was in the vicinity of Ocean City, Maryland. Mr. Pedrick responded that the basis for his opinion was the "emotional intensity" of Mr. L.J. Gallagher in recounting the incident to him in September 2007. Mr. Pedrick made no reference to any other facts or data to support his opinion. His post-deposition submissions in an attempt to circumvent his unambiguous response are outside the letter and spirit of Federal Rule 26 and should be excluded on that basis alone. Plaintiff should not be subjected to cross-examining Mr. Pedrick

on his "scientific principals and methods of study" for the first time during trial. This is the antithesis of pretrial discovery procedure and practice under the Federal Rules.

In footnote 10 Defendants repeat a stream of activity allegedly undertaken by Mr. Pedrick in formulating "his opinions", referencing his deposition testimony at p. 71 L 1 – p. 72 L 15. This testimony does not, in fact, confirm that Mr. Pedrick's opinion is based on the various activities described. The testimony concerned the significance of the additional fuel tank brackets added sometime after the vessel was launched. The testimony most emphatically does not confirm that Mr. Pedrick relied on the various activities specified as the basis of his opinion that the weld on the forward fuel tank broke suddenly in the vicinity of Ocean City, Maryland in July 2007.

Defendants' reference on page 15 of their Response to Mr. Pedrick's June 8, 2010 deposition testimony to bolster his opinion regarding the timing of the tank bracket failure is inapposite for two reasons. Firstly, the quoted testimony does not address that issue. Mr. Pedrick was deposed as a fact witness on June 8, 2010, not as an expert. Secondly, Mr. Pedrick's December 5, 2010 report and recently revised theories were not available to Plaintiff during the June 8, 2010 deposition. Similarly, O'NEILL'S citation on page 16 to Mr. Pedrick's October 4, 2007 report is equally unavailing. Mr. Pedrick's report was compiled for purposes of reporting on his proposed repair plan, not as Defendants' expert in this declaratory action. More significantly, the activities described calculations made and conclusions reached do not address the issue of the timing of the tank bracket failure.

Mr. Pedrick may have reached innumerable conclusions over the course of his review of *BRYEMERE'S* structural failures and loss; however, in this litigation, Defendants now offer Mr. Pedrick's testimony primarily to establish the causation and timing of the failures. The sole purpose of Mr. Pedrick's revised conclusions is to land *BRYEMERE'S* physical loss squarely within the Policy period. His sole basis for doing so, as manifest by his December 8, 2010 deposition, is his subjective interpretation of L.J. Gallagher's "emotional intensity" in recounting the events occurring outside Ocean City, Maryland. Most respectfully, there could not be a lesser scientific basis for an opinion as to the precise time the metal bracket failed then that offered by Mr. Pedrick and the Defendants.

On pages 16-17 Defendants seek to circumvent Mr. Pedrick's testimony in the HMY trial that the delamination of the vessel's topsides existed prior to CAROLINA'S purchase by once

again editorializing on his testimony, alleging he was "plainly referring to incipient delamination." Not only is his counsel's editorializing irrelevant, it does not comport with the trial transcript [HMY Pedrick 04/15/2010, p. 33, L 18 - p 36, L 21]. Defendants are left to refer to Pedrick's *errata* sheet and January 10, 2011 Affidavit filed with Plaintiff's Response. As discussed below and in Plaintiff's forthcoming Motion, neither of these documents is reliable or admissible.

IV   Pedrick's Second Supplemental Expert Affidavit [DE 176-1] Filed with Defendants' Response Should be Stricken from the Record

This is the fourth modification to Pedrick's expert opinion. Pedrick's Second Supplemental Expert Affidavit [DE 176-1] ("Affidavit"), like his First Supplemental Expert Affidavit [DE 153-1][3] filed in support of Defendants' Response to CENTENNIAL's Motion for Summary Judgment, is an attempt to (1) revise his prior expert opinions regarding when and why the damage occurred; and (2) explain away, shift, and qualify his previous, straightforward opinions. Pedrick's Affidavit violates Fed.R.Civ.P. 26 and should be stricken pursuant to Rule 37(c)(1). The Eleventh Circuit instructs that failure to file a supplemental expert report prior to the deadline imposed by a district court is a sufficient basis to exclude the report. *Williamson Oil Co. v. Philip Morris USA,* 346 F.3d 1287, 1323 (11th Cir.2003).

Where an expert affidavit expounded a wholly new and complex approach, as opposed to merely supporting an initial position, the expert's affidavit should be stricken. *See Point Prod. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, *9 (S.D.N.Y. 2004).

Allowing preliminary expert reports as a matter of course would afford litigants an opportunity to "mold their expert reports to meet [their opponent's] legal challenges." *Stein v. Fomex Int'l, Inc.*, 2001 WL 936566 *6 (E.D. Pa. 2001). In this case, Pedrick's Affidavit was not filed in accordance with Rule 26. Pedrick's Affidavit was solely filed in response to CENTENNIAL's Motion to Strike Pedrick. It was carefully crafted as an attempt to comply with the *Daubert* requirements of which CENTENNIAL asserts Pedrick's expert report, rebuttal report, and deposition testimony fall well-short.

---

[3] CENTENNIAL's arguments in favor of striking Pedrick's First Supplement Expert Affidavit [DE 153-1] as set forth in CENTENNIAL's Motion to Strike [DE 195] are incorporated by reference herein given Pedrick's Second Supplemental Affidavit [DE 176-1] suffers the same deficiencies.

In this regard, despite his clear inability in his HMY testimony to state precisely when the fuel tank brackets fractured, in this case, now faced with the necessity to opine that the damage occurred after the Policy attached, Pedrick has changed his tune and offers opinions with great precision as to exactly where and when the fuel tank brackets fractured in his first and second supplemental affidavits. He first offered an opinion as to when the fuel tank brackets failed on the basis of facts that simply did not occur. He offered no factual basis other than the alleged "violent movement" of the tanks as described with great "emotional seriousness" by L.J. Gallagher; a factual basis he now admits was entirely false (Affidavit, ¶ 7). When faced with the unreality of the basis of this opinion, Pedrick effortlessly shifted to yet another basis for his opinion as to when the brackets failed that was completely at odds with his HMY testimony and his deposition testimony in the instant case.

Pedrick's Affidavit admittedly offers no new facts, factual basis, new research, new engineering studies, or new technical investigation that he has undertaken between his testimony in the HMY trial, his deposition, and his two supplemental affidavits provided to explain or justify his radical change in opinion. Indeed, the entire basis for his new opinions rest completely on information that he admits he knew at the time he testified to the contrary in the HMY Litigation. (*See* Pedrick Affidavit, 1/24/2011, DE 176-1, ¶ 10)("…I did no further technical calculations…I have relied on our original engineering work in 2007-2008…However…I have continued to interpret and analyze the facts of PYD's original engineering…").

Paragraph 9 directly contradicts Pedrick's HMY Trial testimony in that it presents new and diametrically opposed conclusions regarding the "sudden" occurrence of tank bracket failure on the voyage from Beaufort, North Carolina to Ocean City, Maryland. (*See* Pedrick Affidavit, 1/24/2011, DE 176-1, ¶ 9). In doing so, Pedrick has developed many theories along the way, including but not limited to the "gradual weakening stage", the "three phases of failure" formula, and the "suddenly accelerated delamination" theory. (*See* Pedrick Affidavit, 1/24/2011, DE 176-1, ¶¶ 9, 12, 17, respectively). Paragraphs 13, 14, and 18-24 attempted to rationalize and support the new conclusions, but are not arrived at by way of any scientific data or approved methodology as required by *Daubert*. The new opinions offered in the Affidavit also differ from the factual basis of his opinion as set forth in his deposition because he has now admitted that factual basis was not true.

In the same way his First Affidavit is deficient, Pedrick references in passing the magnitude and frequency of wave-induced loading on the hull bottom, but does not explain in any way or show through scientific data how the magnitude and frequency of wave-induced loading leads to his conclusion. (*See* Affidavit, ¶ 28). This information was readily available at the time of formulating his expert report and before or during his deposition in this matter. There was no reason **not** to discuss the newly revealed alleged "factual basis" of these opinions in his report or during his deposition.

Under Rule 37, this Court has discretion to sanction a party who fails to provide information required by Rule 26. *See Parrish v. Freightliner, LLC*, 471 F.Supp.2d 1262, 1268 (M.D.Fla.2006). "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Two Men and a Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC*, 2008 WL 5235115, *2 (N.D. Fla. 2008).

Therefore, exclusion is appropriate here under *Two Men* because: (1) the affidavit constitutes unfair surprise against CENTENNIAL, which is now denied the opportunity to cross examine Pedrick regarding his new opinions before trial; (2) CENTENNIAL cannot readily cure the surprise because the time for discovery has long passed and the matter currently sits at the eve trial; (3) introduction of the evidence would disrupt the docket and trial at this late stage in the case; (4) any importance of Pedrick's new opinions is overshadowed by its untimely disclosure; and (5) Pedrick offers no excuse whatsoever for his failure to timely disclose his new opinions (aside from the fact the "emotional seriousness" opinion would not likely survive a *Daubert* challenge). Pedrick's submission of his supporting affidavit in conjunction with Defendants' Response in Opposition to CENTENNIAL's Motion to Strike Pedrick is a product of bad faith and the same should be excluded in accordance with Rules 26 and 37.

Moreover, an affidavit may be stricken as a "sham affidavit" if the affidavit "contradicts previous deposition testimony and the party submitting the affidavit [fails to] give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.,* 2010 WL 1253090 (11th

Cir.2010); *see also Validsa, Inc. v. PDVSA Services Inc.*, 632 F.Supp.2d 1219 (S.D.Fla.2009); *Stevens v. SimplexGrinnell,* 190 Fed.Appx. 768, 771 (11th Cir.2006) (finding the district courts "may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation") (citation omitted).

In determining whether an affidavit constitutes a sham, the Court considers (1) whether the affiant was cross-examined during his earlier testimony, (2) whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and (3) whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Magoffe v. JLG Industries, Inc.*, 2008 WL 2967653, 7 (D.N.M.2008)(citations omitted).

Mr. Pedrick had access to the pertinent evidence referenced in his Affidavit at the time of his earlier deposition testimony, and was acting under a subpoena which directed him to bring that evidence to the deposition. Finally, neither his earlier HMY Trial testimony nor his deposition testimony reflects confusion calling for clarification in a subsequent affidavit. Far from expressing confusion, doubt, or uncertainty about his testimony or the completeness of his expert reports, Pedrick plainly stated during his deposition and his Second Affidavit that he "did no further engineering or calculations about the vessel" from his June 18, 2010 report to his December 8, 2010 deposition. (*See* Deposition Testimony of David Pedrick, December 8, 2010, p. 9:20-11:324, DE 140, Ex. "F"; Pedrick Affidavit, 1/24/2011, DE 176-1, ¶ 10). Clearly, the changes expressed in both of Pedrick's subsequent affidavits did not arise until Defendants' were forced to respond to various motions filed by CENTENNIAL, thereby creating the need to manufacture a "sham affidavit". Accordingly, Pedrick's Affidavit meets all the criteria for exclusion under the "sham affidavit" rule in *Magoffe*, and the same should be stricken from the record.

**WHEREFORE**, Plaintiff AIG CENTENNIAL INSURANCE COMPANY respectfully prays for an Order granting its Motion to Strike and/or Limit Report, Rebuttal Report, Affidavit and Testimony of Defense Expert David Pedrick and for such other and further relief as this Honorable Court deems just and proper under the circumstances.

Respectfully submitted,

_s/_Lawrence Jacobson_

ANDREW W. ANDERSON
aanderson@houckanderson.com
Florida Bar No.: 213144
LAWRENCE JACOBSON
ljacobson@houckanderson.com
Florida Bar No.: 0846201
CHARLES S. DAVANT
cdavant@houckanderson.com
Florida Bar No.: 15178
HOUCK ANDERSON P.A.
Attorneys for Plaintiff
200 South Biscayne Blvd., Suite 300
Miami, Florida 33131
Telephone:  (305) 372-9044
Facsimile:   (305) 372-5044

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_s/_Lawrence Jacobson_
LAWRENCE JACOBSON

## SERVICE LIST

**Attorneys for Bank of America, N.A.**

J. Randolph Liebler, Esquire
Christopher M. Drury, Esquire
Gregory T. King, Esquire
Liebler, Gonzalez & Portuondo, P.A.
Courthouse Tower – 25th Floor
44 West Flagler Street
Miami, Florida 33130
Email: jrl@lgplaw.com
        cmd@lpglaw.com
        gtk@lgplaw.com

Telephone: 305-379-0400
Telefax: 305-379-9626

**Attorneys for J. Brian O'Neill & Carolina Acquisition**

Meghan C. Moore, Esquire
Jeffrey L. Greyber, Esquire
Ver Ploeg & Lumpkin, P.A.
100 SE 2nd Street, 30th Floor
Miami, Florida 33131
Email: mmoore@vpl-law.com
        jgreyber@vpl-law.com
Telephone: (305) 577-3996
Telefax: (305) 577-3550